SEYFARTH SHAW LLP
Michael J. Burns (SBN 172614)
mburns@seyfarth.com
Eric E. Hill (SBN 173247)
ehill@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone:   (415) 397-2823
Facsimile:    (415) 397-8549

Attorneys for Defendants
IHG MANAGEMENT (MARYLAND) LLC dba
HOTEL INDIGO LOS ANGELES
DOWNTOWN, a Maryland limited liability
company; IHG MANAGEMENT MARYLAND
LLC dba HOTEL INDIGO LOS ANGELES
DOWNTOWN, a Maryland limited liability
company.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDRA SLOAN as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>v.<br><br>IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company, and DOES 1-10, inclusive<br><br>Defendants. | Case No.<br><br>**DEFENDANT IHG MANAGEMENT (MARYLAND) LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT UNDER 28 U.S.C. § 1441(b) (DIVERSITY)**<br><br>(Removed from Los Angeles County Superior Court, Case No. BC724262)<br><br>*[Filed concurrently with Civil Cover Sheet, Corporate Disclosure, Notice of Interested Parties, Declaration of W. Clif Deaton and Declaration of Eric Hill]*<br><br>Complaint filed:        October 5, 2018 |

52621248v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that IHG MANAGEMENT (MARYLAND) LLC, ("Defendant")[1], removes the above-referenced action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b), and states that removal is proper for the following reasons:

## I.    SUMMARY OF ACTION

1.    On October 5, 2018, Plaintiff Kendra Sloan ("Plaintiff") filed a civil complaint (the "Complaint") in the Superior Court of the State of California for the County of Los Angeles, entitled *Sloan v. IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company, and DOES 1-10, inclusive,* Case No. BC724262 (the "State Court Action").

2.    In the State Court Action, Plaintiff alleges a claim for civil penalties under the California Private Attorney General Act of 2004 ("PAGA") (California Labor Code § 2698, *et seq.*).

3.    On December 3, 2018, Defendant's registered agent for service of process in California received, via process server, the Summons; the Civil Case Cover Sheet and Addendum; the Complaint; the Notice of Case Assignment; the Alternative Dispute Resolution Information Packet; and related paperwork.  A true and correct copy of the Notice of Service of Process, showing a December 3, 2018 service date, is attached hereto as **Exhibit A**.  A true and correct copy of the Complaint, Civil Case Cover Sheet, Summons, and all other papers received by Defendant in the State Court Action are attached hereto collectively as **Exhibit B**.

---

[1] In his Complaint, Plaintiff lists Defendant twice, as two separate entities - once with parentheses around "Maryland" and once without the parentheses.  The proper entity name is IHG Management (Maryland) LLC.

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.    On December 31, 2018, Defendant filed its Answer to Plaintiff's Unverified Complaint in the State Court Action.  A true and correct copy of the Answer to Plaintiff's Unverified Complaint is attached hereto as **Exhibit C**.

5.    Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibits B and C, in this action prior to this Notice of Removal.  Defendant is informed and believes that the documents attached to this Notice of Removal as Exhibits B through C constitute the entirety of the court file in the State Court Action as of the date of filing this Notice of Removal.  (Declaration of Eric Hill, filed in support of this Notice ("Hill Decl.") ¶3.)[2]

## II.    TIMELINESS OF REMOVAL

6.    Plaintiff served the Complaint on Defendant on December 3, 2018.  See Exh. A; Declaration of Clif Deaton, filed in support of this Notice, ("Deaton Decl.") ¶11, Exh. A.; (Hill Decl. ¶6).  This Notice of Removal is timely as it is filed within thirty (30) days of the date the Complaint was served.  28 U.S.C. § 1446(b).

7.    The time for filing a Notice of Removal does not begin to run until a party has been formally served with the Summons and Complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable."  28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); *accord Kenny v. Wal-Mart Stores, Inc.*, 2018 WL 650998, at *4 (9th Cir. Feb. 1, 2018) ("We have also emphasized that 'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.'").

---

[2]    In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in the State Court Action are attached hereto as Exhibits A, B, and C.

3

8.     The service of process which triggers the 30-day period to remove is governed by state law.  *Osgood v. Main Street Marketing, LLC*, 2016 WL 6698952, at \*2 (S.D. Cal. Nov. 15, 2016) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law." (citing *City of Clarksdale v. BellSouth Telecommunications, Inc*., 428 F.3d 206, 210 (5th Cir. 2005))).

9.     This Notice of Removal is timely because it is filed within 30 days of personal service of the Summons and Complaint on December 3, 2018.[3]   28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery").

## III.     REMOVAL ON THE BASIS OF DIVERSITY JURISDICTION

10.     Because this action is between citizens of different states and the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Accordingly, this action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

### A.     There Is Complete Diversity For Removal

#### 1.     Plaintiff Is A Citizen Of California

11.     To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return.  *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  In addition, for purposes of determining diversity jurisdiction,

---

[3]     Thirty days after December 3, 2018 is January 2, 2019.

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1

various other types of objective facts can establish the plaintiff's state of domicile, including place of employment. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

12.     Plaintiff alleges that she is a resident and domiciliary of the State of California. (Compl. ¶ 6). Plaintiff's allegation that she is a resident of California is *prima facie* evidence that Plaintiff's domicile is in California, and, therefore, Plaintiff is a citizen of California. *State Farm Mutual Auto Ins.*, 19 F.3d at 520.

13.     Plaintiff also provided her home address to Defendant during the course of her employment. Defendant's review of Plaintiff's personnel file reveals that Plaintiff's address, that she provided to Defendant, was in California. (Deaton Decl. ¶8.)

14.     Furthermore, Plaintiff alleges that Defendant does business in California, and that Plaintiff and the purported "aggrieved employees" she seeks to represent were employed by Defendant in California.[4]  (Compl. ¶1, 7); *see also* Compl. ¶6 (Plaintiff was employed by Defendant in the State of California).)

15.     As set forth below, Defendant is a citizen of the States of Maryland, Delaware, and Georgia, but it is not a citizen of the State of California. Since Plaintiff is not a citizen of the States of Maryland, Delaware or Georgia, and rather is and has been a citizen of California, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and the action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

## 2.     Defendant Is Not A Citizen Of California

16.     For purposes of diversity jurisdiction, a corporation is deemed a citizen of its place of incorporation and the location of its principal place of business. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business");

---

[4]     Plaintiff asserts her claims on behalf of herself as well as "current and former employees who worked … in California as non-exempt hourly paid employees …" (Compl. ¶21.)

DEFENDANT'S NOTICE OF REMOVAL

*Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 492 (9th Cir. 1972) (corporations have "dual citizenship").

17.    The United States Supreme Court has held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center." *The Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  In determining a corporation's "nerve center," courts are to examine where the "corporation's officers direct, control, and coordinate the corporation's activities," and where the corporation maintains its headquarters.  *Id.* at 92.  Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based.  *See Ho v. Ikon Office Solutions, Inc*., 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporations headquarters were located, where the corporate officers worked, and from where the corporate policies and procedures arose).  Thus, the "nerve center" is "where the majority of its executive and administrative functions are performed." *Tosco v. Communities for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001) (citation omitted).

18.    IHGM is a Maryland Limited Liability Company.  IHGM is, and has been at all times since this action commenced, organized under the laws of the State of Maryland. (Deaton Decl. ¶9)

19.    The majority of IHGM's executive and administrative functions, including corporate finance and accounting, are performed in Georgia, where its corporate headquarters are located. (Deaton Decl. ¶10)  IHGM's executive operations are managed from its Georgia headquarters, where the majority of its corporate officers maintain offices.  (Deaton Decl. ¶10) IHGM's sole member is InterContinental Hotels Group Resources, Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia.  (Deaton Decl. ¶10) InterContinental Hotels Group Resources, Inc.'s corporate officers maintain offices in Georgia, and a majority of its corporate officers and directors work from its headquarters in Georgia.

6

DEFENDANT'S NOTICE OF REMOVAL

20.     Accordingly, Defendant has been at all relevant times a citizen of the States of Maryland, Delaware, and Georgia.  *See Hertz Corp*., 559 U.S. at 92.  Defendant is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

### 3.    Doe Defendants May Be Disregarded

21.     Pursuant to 28 U.S.C. Section 1441(b), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals, Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants, 1–10, does not deprive this Court of jurisdiction.

### B.    The Amount In Controversy Exceeds $75,000

22.     While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because it is "more likely than not" that the amount in controversy exceeds the jurisdictional minimum.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  Here, the damages requested by Plaintiff "more likely than not" exceed $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

23.     As the Supreme Court recently made clear, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez v Allstate Ins*. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").  Defendant is not obligated to "research, state, and prove the plaintiff's claims for damages."  *Behrazfar v. Unisys Corp*., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d

1199, 1204-05 (E.D. Cal. 2008)).  Thus, Defendant bases the amount in controversy calculations on a plausible reading of the allegations contained in Plaintiff's Complaint.[5]

24.    In determining the amount in controversy, the Court must consider the general damages, special damages, punitive damages, and attorneys' fees that the Complaint has put "in controversy."  *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) ("The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (explaining penalties are properly included in calculating amount in controversy).

**C.    The PAGA Penalties Sought By Plaintiff Exceeds $75,000**

25.    Plaintiff seeks to recover civil penalties under PAGA for Defendant's alleged violations of the following California Labor Code sections and regulations:

- Labor Code sections 201-203 (*see, e.g.*, Compl. ¶¶88-90);
- Labor Code section 204 (*see, e.g.*, Compl. ¶¶83-87);
- Labor Code section 226(a) (*see, e.g.*, Compl. ¶¶78-82);
- Labor Code sections 226.7, 512,  and the applicable IWC Wage Order (*see, e.g.*, Compl. ¶¶61-71, 72-77);
- Labor Code sections 510 and 1198 (*see, e.g.*, Compl. ¶¶47-56);
- Labor Code section 1174 (d) (*see, e.g.*, Compl. ¶¶78-82);
- Labor Code section 1182.12 (*see, e.g.*, Compl. ¶¶57-60);
- Labor Code section 1197 and 1197.1 (*see, e.g.*, Compl. ¶¶57-60);
- Labor Code sections 1198 (*see, e.g.*, Compl. ¶91-95);
- Labor Code section 2802 (*see, e.g.*, Compl. ¶¶96-98)[6]; and

---

[5]    Should Plaintiff or the Court challenge Defendant's amount in controversy allegations contained in this Notice of Removal, Defendant requests that the Court allow Defendant to present evidence to support its calculations.  *See Dart Cherokee Basin Operating*, 125 S. Ct. at 554 ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

[6]    Alternatively, Plaintiff seeks penalties under Labor Code section 558 for the foregoing alleged Labor Code violations.  (Compl. ¶¶ 40.)

DEFENDANT'S NOTICE OF REMOVAL
52621248v.1

- California Code of Regulations, Title 8, Section 11050(4)(c) (*see, e.g.*, Compl. ¶100).

26.    Pursuant to PAGA, 75% of the penalties recovered are distributed to the State Labor and Workforce Development Agency ("LWDA") with the remaining 25% awarded to the purported "aggrieved employees."  Lab. Code § 2699(i).

27.    PAGA claims are subject to a one-year statute of limitations.  Cal. Civ. Proc. Code § 340; *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007).  Plaintiff filed the Complaint on October 5, 2018.  Plaintiff seeks to recover PAGA penalties for violations occurring "during the liability period" from "one year prior" to the date Plaintiff sent Notice to the LWDA (July 31, 2018), which equates to the period of July 31, 2017 to present.  (Compl. ¶1, 37.)

### 1.    The Amount In Controversy For Removal Purposes Is Properly Calculated By Considering The 75% Share Of Penalties Of The Real Party In Interest, The State Of California

28.    In PAGA actions like this one, the State of California, not the named plaintiff, is the real party in interest.  *See Sakkab v. Luxottica N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) ("[a]n employee bringing a PAGA action does so 'as the proxy or agent of the state's labor law enforcement agencies,'. . . *the real parties in interest*") (emphasis added); *Archila v. KFC U.S. Props., Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011) ("California [is] a real party in interest to a PAGA action").  Indeed, a PAGA action seeks penalties for violations of the Labor Code, that prior to PAGA's enactment, were recoverable by the LWDA only.  In such actions, the State—as the enforcer of the Labor Code—retained the penalties.  PAGA altered this *status quo* by allowing the State to deputize individual plaintiffs to bring suit on behalf of the State, if the individuals provided notice of the alleged Labor Code violations to the LWDA and the State declined to prosecute them.  *See* Cal. Lab. Code § 2699.3(b)(2)(B).

29.    The fact that PAGA incentivized private citizens to act *on behalf* of the State of California by providing them with a 25% cut of the State's penalties does not change the well-established fact that the State of California is the real party in interest.  *See* Cal.

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1

Lab. Code § 2699(i).  The State retains the lion's share of penalties, a 75% cut.  *See id.* This makes sense because the State as the real party in interest still holds title to any PAGA claim, unlike others (i.e., Plaintiff here), who may simply seek to benefit by the litigation.[7]  *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) ("The real party in interest is the person holding the substantive right sought to be enforced"); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986) (the real party in interest is the party entitled to the damages at issue in a lawsuit).

30.     In a PAGA case, the amount recoverable by the "real party in interest"—the party holding actual title and all substantive rights to the claim—represents the amount in controversy for removal.  *See Sakkab*, 803 F.3d at 436 (a PAGA action is simply "a statutory action for penalties brought as a proxy for the state, *rather than* a procedure for resolving the claims of other employees") (emphasis added). Thus, the amount in controversy on a PAGA claim, for removal purposes, is properly calculated by considering the 75% share of the penalties attached to the real party in interest, the State of California.

31.     As set forth in Plaintiff's Complaint, Plaintiff seeks penalties under various provisions of the Labor Code for the applicable limitations period (Compl. ¶39). Specifically, Plaintiff alleges various statutory violations and seeks recovery for penalties authorized by PAGA.

32.     Plaintiff specifically seeks "civil penalties and any other available relief" for violations committed "at any time between one year before Plaintiff's submission of the LWDA Notice in advice of Plaintiff's filing of this complaint (in addition to all days the period was stayed or tolled) until judgment." (Compl. ¶ 1)  Thus, according to the Complaint, Defendant's alleged Labor Code violations were repeated and ongoing

---

[7]     It should be noted that the State of California, "as the real party in interest, is not a 'citizen' for diversity purposes."  *Urbino v. Orkin Servs. Of Cal., Inc.*, 726 F.3d 1118, 1123 (9th Cir. 2013).

DEFENDANT'S NOTICE OF REMOVAL

throughout the applicable limitations period. Plaintiff submitted her LWDA notice on July 31, 2018 (Compl. ¶ 37), and therefore seeks penalties from July 31, 2017 to present.

33.    Further, Plaintiff alleges ongoing Labor Code violations based on the allegation that Plaintiff and those she seeks to represent were not paid all wages owed twice per month. (*See, e.g.*, Compl. ¶86 ("At all relevant times herein, Defendants failed to pay Plaintiff and Aggrieved Employees all wages due including, but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and/or split shift premiums, specified by Labor Code section 204."). Defendant's employees were paid on a bi-weekly basis, meaning there are 26 pay perios per year. (Deaton Decl. ¶6) As such, Plaintiff alleges 36 separate penalties — for each provision of the Labor Code for which penalties are sought.[8] The total of these penalties for each individual employed during the relevant period, based on Plaintiff's own allegations, far exceeds the $75,000 requirement for diversity jurisdiction:

---

[8]    The amount in controversy is "assessed as of 'the time of removal.'" *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 417 (9th Cir. 2018). Plaintiff alleges a pattern or practice that violated the Labor Code "at all times relevant." (Compl. ¶¶52, 65, 69, 75, 86, 89, 97.) Thus, for purposes of calculation of the amount in controversy, Defendant counts the initial pay period during the applicable limitations period as an initial violation Plaintiff seeks to recover PAGA penalties for violations occurring "during the liability period" from "one year prior" to the date Plaintiff sent Notice to the LWDA, which equates to the period of July 31, 2017 to December 31, 2018 (*i.e.*, the time of removal), or approximately 36 bi-monthly pay periods. (Compl. ¶12.)

11

52621248v.1

| Complaint Citation | Labor Code Provision(s) For Which Penalty Sought | Penalty for Each Violation | Total |
|---|---|---|---|
| Complaint ¶¶47-56, 57-60, 91-95<br><br>(Failure to Pay Overtime and Minimum Wages) | | $100 for initial violation and $200 for each subsequent[9]<br>(1 x $100) + (35 x $200) | |
| | Labor Code § 510<br>("Day's work"; Hours) | | $7,100 |
| | Labor Code § 1198<br>(maximum hours) | | $7,100 |
| | Labor Code § 1197<br>(requirement that minimum wage be paid) | $100 for initial violation and $250 for each subsequent<br>(1 x $100) + (35 x $250) | $8,850 |
| | Labor Code § 1197.1<br>(civil penalty for payment of wage less than legal minimum) | | $8,850 |
| | Labor Code § 1194<br>(minimum wage plus overtime) | $100 per violation and $200 for each subsequent<br>(1 x $100) + (35 x $200) | $7,100 |
| | Labor Code § 1182.12<br>(minimum wage) | $100 per violation and $200 for each subsequent<br>(1 x $100) + (35 x $200) | $7,100 |
| | Cal. Code Reg., Title 8, § 11050(4)(c) | $100 per violation and $200 for each subsequent<br>(1 x $100) + (35 x $200) | $7,100 |

---

[9]     While Defendant denies that these penalties are recoverable, PAGA does provide for penalties consisting of $100 for an "initial violation" in a pay period and $200 per pay period for each "subsequent violation," unless the code that is alleged to have been violated specifically provides for its own civil penalty.  See Cal. Labor Code § 2699(f)(2).  Plaintiff alleges she is entitled to a $100 penalty for each initial violation and $200 for each subsequent violation.  (Compl. ¶56, 66, 86, 99, 111, 129, 139, and 149.) To the extent a different formula is used to calculate the amount in controversy herein, that formula is derived from the underlying code that is alleged to have been violated.  These numbers are used only for purposes of estimating the potential PAGA penalty exposure, and for removal purposes only.  This is not an admission by Defendant as to the scope of liability.

12

52621248v.1

| Complaint Citation | Labor Code Provision(s) For Which Penalty Sought | Penalty for Each Violation | Total |
|---|---|---|---|
| Complaint ¶¶62-71 (Failure to Provide Meal Periods) | Labor Code § 226.7 (provision of meal, rest, or recovery period) | $100 for initial violation and $200 for each subsequent (1 x $100) + (35 x $200) | $7,100 |
| | Labor Code § 512(e) (meal periods) | | $7,100 |
| | IWC Wage Order No. 5-2001 (meal periods) | $50 for initial violation and $100 for each subsequent (1 x $50) + (35 x $100) | $3,550 |
| Complaint ¶¶72-77 (Failure to Provide Rest Periods) | Labor Code § 226.7 (rest periods) | $100 for initial violation and $200 for each subsequent (1 x $100) + (35 x $200) | $7,100 |
| | IWC Wage Order No. 5-2001 (rest periods) | $50 for initial violation and $100 for each subsequent (1 x $50) + (35 x $100) | $3,550 |
| Complaint ¶¶72-77 (Failure to Provide Itemized Wage Statements) | Labor Code § 226 (wage statements) | $50 for initial violation and $100 for each subsequent (1 x $50) + (35 x $100) | $3,550 |
| Complaint ¶¶83-87 (Failure to Pay Wages During Employment) | Labor Code § 204 and 210 (semi-monthly payment) | $100 for initial violation and $200 for each subsequent. Labor Code § 210 (1 x $100) + (35 x $200) | $7,100 |
| Complaint ¶¶96-98 | Labor Code § 2802 (expense reimbursement) | $100 for initial violation and $200 for each subsequent (1 x $100) + (35 x $200) | $7,100 |
| | | | $99,350 |

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1

34.     In addition to the foregoing claims, Plaintiff seeks penalties for other alleged
Labor Code violations that would have occurred one or more times during the course of
each aggrieved employee's employment:

| Complaint Citation | Labor Code Provision(s) For Which Penalty Sought | Penalty for Each Violation | Total |
|---|---|---|---|
| Complaint ¶88-90 (Failure to provide wages at termination) | Labor Code § 201 (payment at discharge) | $100 for initial violation and $200 for each subsequent | At least $100 |
| | Labor Code § 202 (payment of quitting employee) | | At least $100 |
| | Labor Code § 203 (waiting time penalties) | | At least $100 |
| Compl. ¶80 (Failure to Maintain Records) | Labor Code § 1174(d) and 1174.5 (maintenance of payroll records) | $500 for initial violation | At least $500 |
| | | | At least |
| Total Grand Total per aggrieved employee | | | At least $800 |
| | | | |
| | | | $99,350.00 |
| | | | $800.00 |
| | | | $100,150.00 |

35.     Moreover, Plaintiff asserts claims on behalf of other "current and former
employees who worked for" Defendants "in California as non-exempt, hourly-paid
employees."  (Compl. ¶1; *see also id*. ¶53.)  Defendant currently employs or has
employed approximately 1,656 such individuals in the State of California in the single
year preceding Plaintiff's LWDA Notice, from July 31, 2017 through November 15,
2018.  (Deaton Decl. ¶4.)

36.     As noted above, Plaintiff has alleged at least 17 separate violations of the
Labor Code and regulations in support of his PAGA claim.  Even based on 2 underlying

52621248v.1

violations for each of the 1,656 employees, at the initial penalty of $100, Plaintiff's allegations puts at least roughly $331,200 in controversy. (1,656 X 2 x $100). The 75% share of these alleged penalties in controversy as to the real party in interest, the State of California, is therefore at least **$248,400**.

### 2. In the Alternative, The Amount In Controversy For Each "Aggrieved" Employee Also Exceeds $75,000

37.   Based on the above, the $75,000 amount in controversy requirement is clearly met. Moreover, in the alternative, this threshold is also met by considering the amount in controversy for each aggrieved employee. Defendant understands that *Urbino v. Orkin Services of California, Inc.*, 726 F.3d 1118, 1119 (9th Cir. 2013), foreclosed the aggregation of the value of *multiple* employees' claims in a PAGA case, to meet the amount in controversy requirement for federal diversity jurisdiction.[10] However, *Urbino* neither considered nor addressed the proper calculation of the amount in controversy for a PAGA claim *without* aggregating the value of multiple employees' claims.

38.   "Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant, and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). *Urbino* expressly considered only item (2) — aggregating the claims of multiple plaintiffs. *Urbino* did not expressly consider item (1), in the context of a theory that the single named PAGA plaintiff is aggregating her *own* representative claims against a

---

[10]    In other words, the Ninth Circuit has held that "the penalties payable to other members of the potential class of employees may not be aggregated to satisfy the amount-in-controversy requirement for jurisdiction under 28 U.S.C. § 1332(a)." *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1153-54 (C.D. Cal. 2013) (explaining *Urbino's* holding that the penalties going to aggrieved employees may not be aggregated to satisfy the amount-in-controversy requirement for jurisdiction under 28 U.S.C. § 1332(a)) (citing *Urbino*, 726 F.3d at 1122-23; see also *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1044-45 (N.D. Cal. 2014) (explaining that *Urbino* did not address the aggregation of LWDA and personal penalties but only aggregation of penalties owed to the entire group of "aggrieved employees")

15

52621248v.1

single defendant in addition to the share that would be received by the LWDA. Because the issue in *Urbino* was the propriety of aggregating recoveries going to multiple plaintiffs or multiple aggrieved employees in calculating the amount in controversy, it did not squarely consider this theory.[11] *See Pagel*, 986 F. Supp. 2d at 1156 (explaining "[t]he Ninth Circuit's *Urbino* decision considered whether PAGA claims fell under the second exception").

39. Thus, excluding the distinct portion of the PAGA penalties that go to the aggregate of individual employees, as *Urbino* did, leaves for consideration the money that goes to the LWDA. Because that money is "part of the 'object of the suit,'" the Complaint places the LWDA proceeds in controversy. *Pagel*, 986 F. Supp. 2d at 1160 (fact that certain monies go to the LWDA, not to individual aggrieved employees, "does not remove those sums from the amount in controversy calculation. They are part of 'the object of the suit,' and from [defendant's] viewpoint are part of the total damages it will pay if the suit succeeds") (quoting *Packard v. Banton*, 264 U.S. 140, 142 (1924)); *see also Patel*, 58 F. Supp. 3d at 1047-48 ("Here, Defendant Nike owes an obligation to Plaintiff Patel and LWDA to obey the state Labor Code, but it owes that obligation to both entities as a plurality. . . . The adjudication of Patel's claims will implicate both Patel's rights and the LWDA's. Once the LWDA has been informed of the potential Labor Code violations and declined to prosecute them, Patel's claims are not 'cognizable' as different claims that [sic] the LWDA's.").

---

[11] Subsequent California Supreme Court and Ninth Circuit rulings have also cast doubt on *Urbino's* continuing validity. *Sakkab*, which was decided two years after *Urbino*, is an example. Not only does *Sakkab* suggest that the penalties recoverable by the State as the real party in interest comprise the amount in controversy that should be considered for removal purposes (as discussed above), but it challenges *Urbino's* premise that the total penalties recoverable in a PAGA action are the aggregate of penalties from individual employees' claims. Because the parties in *Urbino* argued for removal based solely by aggregating claims, the *Urbino* court had assumed that the rights at issue in a PAGA claim are held individually. *Sakkab* makes clear that PAGA actions "do not aggregate individual claims," but instead implicate the claims of the real party in interest, the State of California. *Sakkab*, 803 F.3d at 437 (emphasis added).

52621248v.1

40.    Accordingly, the amount-in-controversy requirement is met if the penalties owed by a defendant for the Labor Code violations pertaining to a single individual amounts to over $75,000, regardless of the end recipient of any specific portion of those funds.  *See Patel*, 58 F. Supp. 3d at 1048 (concluding that "the entire amount of PAGA penalties attributable to [the plaintiff's] claims count toward the amount in controversy").

41.    While Defendant denies that Plaintiff is entitled to any relief in this action and believes her allegations are meritless, the amount in controversy is dictated by Plaintiff's claims in the Complaint, not the merits.  As set forth above, the amount in controversy for each individual whom Plaintiff seeks to represent who was employed since July 31, 2017, based on Plaintiff's own allegations in the Complaint, is roughly $100,150, which far exceeds $75,000.  The real party in interest's 75% share of this amount also exceeds $75,000.

42.    To the extent any Plaintiff does not independently meet the amount-in-controversy requirement, this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Section 1367(a) allows supplemental jurisdiction when those claims without original jurisdiction "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  The Supreme Court has made clear that although complete diversity is necessary for supplemental jurisdiction, only one plaintiff must meet the amount-in-controversy requirement.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) ("The single question before us, therefore, is whether a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a 'civil action of which the district courts have original jurisdiction' [within the meaning of 28 U.S.C. § 1367(a)]. . . .  We now conclude the answer must be yes."); *Carey v. S.J. Louis Const. Inc.*, No. 2:10-CV-2017-GEB-GGH, 2010 WL 3853348, at *4 (E.D. Cal. Sept. 30, 2010) ("In an action involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if (1) at least one plaintiff satisfies the amount in controversy, (2)

17

the other elements of diversity jurisdiction are satisfied, and (3) the plaintiff's claims are part of the same 'case or controversy.'"); *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499FVSDLB, 2006 WL 707291, at \*2 (E.D. Cal. Mar. 17, 2006) ("In cases involving multiple plaintiffs, the removing defendant need only show that one of the plaintiffs has an amount in controversy greater than \$75,000.00").

43.    Further, in this case, Plaintiff alleges that Defendant engaged in a pattern or practice of Labor Code violations throughout the entire applicable time period which forms the basis for all of her claims. (*See* Compl. ¶¶53-55, 58, 65-71, 75-77, 79-80, 86, 89-90, 97-98). Accordingly, all of Plaintiff's claims form part of the same case or controversy because they are based on the same "nucleus of operative facts." *See Kohler v. Inter Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001) (supplemental jurisdiction proper because claims stemmed from same factual circumstances); *Carey*, 2010 WL 3853348 at \*\*4-5 (denying motion to remand because one plaintiff demonstrated the required amount in controversy and the others alleged the same Labor Code violations such that their allegations were part of the same case or controversy).

44.    Thus, the Court has proper jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b).

### 3.    Attorneys' Fees And Costs Will Exceed $75,000

45.    Plaintiff also seeks attorneys' fees. (Compl. ¶103.) Defendant anticipates depositions being taken in this case, and that ultimately, Defendant will file a Motion for Summary Judgment. Based on defense counsel's experience, attorneys' fees in California wage-and-hour PAGA cases often exceed \$75,000. Moreover, given the number of represented employees in this action, a trial in this matter is likely to be lengthy. *See, e.g., Medlock v. Host Int'l, Inc.*, 2013 WL 2278095, at \*8 (E.D. Cal. May 22, 2013) (explaining the court "will not tolerate witnesses being presented without the presenting party having certainty as to what the testimony will reveal" and not requiring depositions but interviews of at least 87 employees in PAGA action). In this regard, it is more likely than not that the attorneys' fees will exceed \$75,000 through discovery and a

summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial.[12]  (Hill Decl. ¶5.)

### 4. Plaintiff's Statement Regarding The Amount Of Damages Recoverable Does Not Affect The Amount In Controversy At The Time Of Removal

46.    Plaintiff statement in her Complaint that her "share of civil penalties sought in this action does not exceed $75,000," (Compl. ¶1) does not actually limit the amount in controversy in this case, for two reasons.

47.    First, "a party's affirmative stipulation cannot establish or deprive the court of subject matter jurisdiction[.]"  *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616 AWI SKO, 2010 WL 2793650, at *4 (E.D. Cal. July 14, 2010); *accord Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1988) ("a defect in subject matter jurisdiction cannot be stipulated to or waived" and plaintiff' refusal to stipulate regarding the potential amount of damages "would serve no effect in determining the actual amount in controversy at the time of removal.").

48.    Second, Plaintiff's stipulation does not limit the amount in controversy regarding the other purportedly "aggrieved" employees whom Plaintiff seeks to represent.  As set forth above, Plaintiff asserts claims on behalf of 1,658 other current and former employees. Moreover, the penalties in controversy for the real party in interest, the State of California, exceed $75,000 as noted above.

## IV.    NO JOINDER REQUIRED

49.    Unnamed, or Doe defendants are not required to join in removal.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 n.1 (9th Cir. 1988) (Doe defendants need not join in removal).

---

[12]    Although "only the portion of attorney's fees attributable to [Plaintiff]'s claims count towards the amount in controversy" on Plaintiff's PAGA claims, the amount in controversy in this case will be even greater after taking into account Plaintiff's claim for attorneys' fees.  *Patel*, 58 F. Supp. 3d at 1049.

DEFENDANT'S NOTICE OF REMOVAL

## V.     VENUE

50.     Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Under 28 U.S.C. § 102, this Court embraces the Superior Court of the State of California for the County of Los Angeles.  Accordingly, this Court is the appropriate Court to which remove this action. 28 U.S.C. § 1441(a).

## VI.     PRAYER FOR REMOVAL & NOTICE OF REMOVAL TO STATE COURT

51.     WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

52.     This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

53.     In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served in this action are attached hereto.  They are:

**Exhibit A**:  Notice of Service of Process;

**Exhibit B**:  the Complaint; the Affidavit of Kendra Sloan; the Summons; the Civil Case Cover Sheet and Addendum; the Notice of Case Assignment; the Alternative Dispute Resolution Information Packet; and related paperwork.; and

**Exhibit C**:  Defendant's Answer.

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1

1    DATED:  January 2, 2019                    Respectfully submitted,

2                                                SEYFARTH SHAW LLP

3

4                                                By:  /S/ *Eric E. Hill*
                                                      Michael J. Burns
5                                                     Eric E. Hill

6                                                Attorneys for Defendant
                                                 IHG MANAGEMENT MARYLAND
7                                                LLC, AND IHG MANAGEMENT
                                                 (MARYLAND) LLC,
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL

52621248v.1