LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich, Esq., Cal. State Bar No. 186670
Mark@yablonovichlaw.com
1875 Century Park East, Suite 700
Los Angeles, California 90067-2508
Telephone: (310) 286-0246 • Fax: (310) 407-5391

Mónica Balderrama (SBN 196424)
MBalderrama@InitiativeLegal.com
G. Arthur Meneses (SBN 105260)
AMeneses@InitiativeLegal.com
Initiative Legal Group APC
1801 Century Park East, Suite 2500
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Plaintiff Kendra Sloan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDRA SLOAN, as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:19-cv-00021-DMG-JC<br><br>ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ.*<br><br>**NOTICE OF FILING FIRST AMENDED COMPLAINT**<br><br>Complaint Filed:  October 05, 2018<br>FAC Filed:  December 27, 2018<br>Removal Date:  January 02, 2019<br>Trial Date:  None Set |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Kendra Sloan filed her First Amended Complaint on December 27, 2018 with the State of California, Los Angeles Superior Court, before the action was removed.

Attached as Exhibit A is a copy of the First Amended Complaint with proof of service by mailing on January 4, 2019.

Dated: January 11, 2019                    Respectfully submitted,

                                           Law Offices of Mark Yablonovich

                                           By: _____
                                           Mark Yablonovich

                                           Attorneys for Plaintiff Kendra Sloan

NOTICE OF FILING FIRST AMENDED COMPLAINT

EXHIBIT A

LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich, Esq., Cal. State Bar No. 186670
mark@yablonovichlaw.com
1875 Century Park East, Suite 700
Los Angeles, California 90067-2508
Telephone: (310) 286-0246 • Fax: (310) 407-5391

Mónica Balderrama (SBN 196424)
MBalderrama@IniaitiveLegal.com
G. Arthur Meneses (SBN 105260)
AMeneses@InitiativeLegal.com
Joseph Liu (SBN 256956)
JLiu@InitiativeLegal.com
Initiative Legal Group APC
1801 Century Park East, Suite 2500
Los Angeles, California 90067
Telephone:     (310) 556-5637
Facsimile:     (310) 861-9051

Attorneys for Plaintiff Kendra Sloan

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 27 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By: Raul Sanchez, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES     **BY FAX**

| | |
|---|---|
| KENDRA SLOAN, as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, a Maryland limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  BC724262<br><br>ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ.*<br><br>**FIRST AMENDED PAGA COMPLAINT**<br><br>(1) Claim for Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*<br><br>**Jury Trial Demanded** |

1    Plaintiff KENDRA SLOAN ("Plaintiff"), as an aggrieved employee and on behalf of

2    all other non-party aggrieved employees, alleges as follows:

3                              **JURISDICTION AND VENUE**

4        1.    This is a law enforcement action under the Labor Code Private Attorneys

5    General Act of 2004, California Labor Code section 2698 *et seq.* ("PAGA") to recover civil

6    penalties and any other available relief on behalf of Plaintiff, the State of California, and

7    other current and former employees who worked for IHG MANAGEMENT (MARYLAND)

8    LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, IHG MANAGEMENT

9    MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN, and/or DOES 1

10   through 10 (collectively "Defendants" or "IHG") in California as non-exempt, hourly-paid

11   employees and against whom one or more violations of any provision in Division 2 Part 2

12   Chapter 1 of the Labor Code or any provision regulating hours and days of work in the

13   applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth

14   in this complaint ("Aggrieved Employees"), at any time between one year before Plaintiff's

15   submission of the LWDA Notice (defined below) in advance of Plaintiff's filing of this

16   complaint (in addition to all days the period was stayed or tolled) until judgment. Plaintiff's

17   share of civil penalties sought in this action does not exceed $75,000.

18       2.    This Court has jurisdiction over this action pursuant to the California

19   Constitution, Article VI, section 10. The statute under which this action is brought does not

20   specify any other basis for jurisdiction.

21       3.    This Court has jurisdiction over all Defendants because Defendants are either

22   citizens of California, have sufficient minimum contacts in California, or otherwise

23   intentionally avail themselves of the California market so as to render the exercise of

24   jurisdiction over them by the California courts consistent with traditional notions of fair play

25   and substantial justice. There is no basis for federal diversity jurisdiction in this action given

26   that the State of California, the real party in interest, is not a "citizen" for purposes of

27   satisfying diversity jurisdiction. *Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118, 1123 (9th Cir.

28   Cal. 2013) (holding when the real party in interest is a state, it cannot be a "citizen" for

purposes of diversity jurisdiction). *Urbino* also holds that civil penalties cannot be aggregated to satisfy the amount in controversy requirement for federal diversity jurisdiction in this action. *Id.*

4.    Venue is proper in this Court, because Defendants employ persons in this county and employed Plaintiff in this county, and thus a substantial portion of the transactions and occurrences related to this action occurred in this county.

5.    PAGA authorizes aggrieved employees to sue as private attorneys general their current or former employers for various civil penalties for violations of various provisions in the California Labor Code.

**THE PARTIES**

6.    Plaintiff KENDRA SLOAN is a resident of North Hollywood, in Los Angeles County, California. Defendants employed Plaintiff from approximately July 2017 to November 2017, as an hourly, non-exempt Bartender at their Hotel Indigo in Downtown Los Angeles. At the time Plaintiff's employment with Defendants ended, she earned approximately $16.81 per hour. Her job duties included crafting cocktails, taking food and drink orders for patrons, and serving food and drinks to patrons.

7.    Defendant IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN was and is, upon information and belief, a Maryland limited liability company doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

8.    Defendant IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN was and is, upon information and belief, a Maryland limited liability company doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

9.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, and will seek leave of this Court to

FIRST AMENDED PAGA COMPLAINT

amend the complaint and serve such fictitiously named defendants once their names and capacities become known.

10.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 are the partners, agents, owners, shareholders, managers, or employees of IHG MANAGEMENT (MARYLAND) LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN which was and is, upon information and belief, a Maryland limited liability company and IHG MANAGEMENT MARYLAND LLC dba HOTEL INDIGO LOS ANGELES DOWNTOWN which was and is, upon information and belief, a Maryland limited liability company at all relevant times.

11.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, Defendants each acting as the agent, employee, alter ego, joint employer, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

12.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages and violations herein alleged.

13.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein

## PAGA ALLEGATIONS

14.    Defendants are Maryland limited liability companies that own and operate numerous large hotel brands such as Hotel Indigo, Holiday Inn, Crowne Plaza, and others. Upon information and belief, Defendants have employed approximately 100 current and former employees at the Hotel Indigo locations in California.

15.     Upon information and belief, Defendants maintain a single, centralized Human Resources department at their corporate headquarters in Alpharetta or Atlanta, Georgia, for all hourly, non-exempt employees working for Defendants in California, including Plaintiff and Aggrieved Employees.

16.     In particular, Plaintiff and Aggrieved Employees, on information and belief, received the same standardized documents and/or written policies. Upon information and belief, the usage of standardized documents and/or written policies indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.

17.     Upon information and belief, Defendants maintain a centralized Payroll department at their corporate headquarters in Alpharetta or Atlanta, Georgia, which processes payroll for all hourly, non-exempt employees working for Defendants at their various locations in California, including Plaintiff and Aggrieved Employees. Based upon information and belief, Defendants issue the same uniform and formatted wage statements to all hourly, non-exempt employees in California, irrespective of their work location or position. Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

18.     Defendants continue to employ hourly, non-exempt employees in California.

19.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

20.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff and Aggrieved Employees were not paid for all hours worked because, among other reasons, all hours worked were not recorded.

21.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to receive certain

FIRST AMENDED PAGA COMPLAINT

wages for overtime compensation and that they were not receiving overtime wages at the correct overtime rate and/or for work that was required to be performed.

22.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be performed. In violation of the California Labor Code, Plaintiff and Aggrieved Employees were not paid at least minimum wages for all work performed.

23.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to meal periods in accordance with the Labor Code; that Plaintiff and Aggrieved Employees were entitled to payment of one additional hour of pay at their regular rates of compensation when they were not provided with timely, uninterrupted, or thirty-minute meal periods; and that Plaintiff and Aggrieved Employees were not provided with all meal periods nor payment of one additional hour of pay at their regular rates of compensation when they did not receive a timely, uninterrupted, or thirty-minute meal period.

24.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to rest periods in accordance with the Labor Code and applicable IWC Wage Order, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to payment of one additional hour of pay at their regular rates of compensation when they were not provided with a compliant rest period, and that Plaintiff and Aggrieved Employees were not provided compliant rest periods nor payment of one additional hour of pay at their regular rates of compensation when they were not provided a compliant rest period.

25.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to receive complete and accurate wage statements in accordance with California law. In violation of the California Labor Code, Plaintiff and Aggrieved Employees were not provided complete and

FIRST AMENDED PAGA COMPLAINT

accurate wage statements.

26.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete time and/or payroll records in accordance with the Labor Code and applicable IWC Wage Order, but failed to do so.

27.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to timely payment of wages during their employment. In violation of the California Labor Code, Plaintiff and Aggrieved Employees did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

28.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to timely payment of all wages earned upon termination of employment. In violation of the California Labor Code, Plaintiff and Aggrieved Employees did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

29.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to payment of one additional hour of pay at minimum wage for working split shifts, and that Plaintiff and Aggrieved Employees were not provided payment of one additional hour of pay at minimum wage when they worked a split shift.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Aggrieved Employees were entitled to reimbursement for all business-related expenditures and/or losses they incurred during the course and scope of their employment, and that they did not receive reimbursement of applicable business-related expenditures and/or losses they incurred.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

should have known that Plaintiff and Aggrieved Employees were entitled to suitable seating and/or were entitled to sit when it did not interfere with the performance of their duties.

32. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and Aggrieved Employees for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and Aggrieved Employees that they were properly denied wages, all in order to increase Defendants' profits.

33. At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

34. PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

35. Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or former employees and one or more of the alleged violations were committed against them.

36. Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

    (a) The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

1          (b)    An aggrieved employee's notice filed with the LWDA pursuant to

2                2699.3(a) and any employer response to that notice shall be

3                accompanied by a filing fee of seventy-five dollars ($75).

4          (c)    The LWDA shall notify the employer and the aggrieved employee or

5                representative by certified mail that it does not intend to investigate the

6                alleged violation ("LWDA Notice") within sixty (60) calendar days of

7                the postmark date of the aggrieved employee's notice. Upon receipt of

8                the LWDA Notice, or if no LWDA Notice is provided within sixty-five

9                (65) calendar days of the postmark date of the aggrieved employee's

10               notice, the aggrieved employee may commence a civil action pursuant

11               to California Labor Code section 2699 to recover civil penalties.

12       37.    Pursuant to California Labor Code section 2699.3(c), aggrieved employees,

13   through Plaintiff, may pursue a civil action arising under PAGA for violations of any

14   provision other than those listed in Section 2699.5 after the following requirements have been

15   met:

16         (a)    The aggrieved employee or representative shall give (a) written notice

17               by online filing with the LWDA and by certified mail to the employer of

18               the specific provisions of the California Labor Code alleged to have

19               been violated (other than those listed in Section 2699.5), including the

20               facts and theories to support the alleged violation.

21         (b)    An aggrieved employee's notice filed with the LWDA pursuant to

22               2699.3(c) and any employer response to that notice shall be

23               accompanied by a filing fee of seventy-five dollars ($75).

24         (c)    The employer may cure the alleged violation within thirty-three (33)

25               calendar days of the postmark date of the notice sent by the aggrieved

26               employee or representative. The employer shall give written notice

27               within that period of time by certified mail to the aggrieved employee or

28               representative and by online filing with the LWDA if the alleged

violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence. If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

38.     On July 31, 2018, Plaintiff provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with the applicable filing fee of seventy-five dollars ($75). A true and correct copy of Plaintiff's written notices to the LWDA and Defendants dated July 31, 2018, is attached as Exhibit 1.

39.     As of the filing of this complaint, over 65 days have passed since Plaintiff sent the LWDA Notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

40.     On October 16, 2018, Plaintiff provided a second written notice by online filing to the LWDA and by Certified Mail to Defendants of additional specific provisions of the California Labor Code and applicable Wage Order alleged to have been violated, including facts and theories to support the alleged violations, in accordance with the applicable filing fee of seventy-five dollars ($75). A true and correct copy of Plaintiff's written notices to the LWDA and Defendants dated October 16, 2018, is attached as Exhibit 2.

41.     As of the filing of this amended complaint, over 65 days have passed since Plaintiff sent the second LWDA Notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

42.     Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code sections 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants, in addition to other remedies, for violations of California Labor Code sections 201-204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802 as well as all applicable Wage Orders.

43.     Labor Code section 558(a) provides that "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages; (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

44.     Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and Aggrieved Employees' rights by violating various sections of the California Labor Code as set forth above.

45.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work, as well as the applicable IWC Wage Order.

46.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), 2699.5, and Section 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other Aggrieved Employees, and the State of California against Defendants, in addition to other remedies, for violations of California Labor Code sections 201-204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802 as well as all applicable IWC Wage Orders.

**FIRST CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

**(Against all Defendants)**

47.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

48.     California Labor Code sections 2698, *et seq.* ("PAGA") permit Plaintiff to recover various civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5. Section 2699.5 enumerates Labor Code sections 201-204, 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802. Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including section 1182.12.

49.     Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

(a)     Violation of Labor Code sections 510 and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and Aggrieved Employees with all required overtime pay, as set forth below;

(b)     Violation of Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and Aggrieved Employees with at least minimum wages for all hours worked, as set forth below;

(c)     Violation of Labor Code sections 226.7, 512(a), and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiff and Aggrieved Employees with meal and rest periods, as set forth below;

(d)     Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiff and Aggrieved Employees, as set forth below;

(e)     Violations of Labor Code sections 1174(d) and 1198, and the applicable IWC Wage Order for failure to maintain accurate payroll records, as set forth below;

(f)     Violations of Labor Code section 1198, and the applicable IWC Wage

Order for failure to maintain accurate time records, as set forth below;

(g)   Violation of Labor Code section 204 for failure to timely pay all earned wages during employment, as set forth below;

(h)   Violation of Labor Code sections 201, 202, and 203 for failure to timely pay all earned wages upon termination, as set forth below;

(i)   Violations of Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(4)(C) for failure to pay shift premiums to Plaintiff and Aggrieved Employees who worked split shifts, as set forth below;

(j)   Violations of Labor Code section 2802 for failure to reimburse Plaintiff and Aggrieved Employees for all business expenditures and/or losses necessarily incurred, as set forth below; and

(k)   Violation of Labor Code section 1198 and section (14) of the applicable IWC Wage Order for failing to provide suitable seating to Plaintiff and Aggrieved Employees, as set forth more fully herein.

## FAILURE TO PAY OVERTIME

## VIOLATION OF LABOR CODE SECTIONS 510 AND 1198

50.    Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

51.    California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

52.    Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and Aggrieved Employees working more than eight hours in a

day or more than forty hours in a workweek, at the rate of time and one-half for all hours worked in excess of eight hours in a day or more than forty hours in a workweek.

53.    The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and Aggrieved Employees working more than twelve hours in a day, overtime compensation at a rate of two times their regular rate of pay, and required to pay Plaintiff and Aggrieved Employees at a rate of two times their regular rate of pay for hours worked in excess of eight hours on the seventh consecutive day of a work in a workweek.

54.    An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

55.    At all relevant times, Defendants failed to pay all overtime wages owed to Plaintiff and Aggrieved Employees. At all relevant times, Plaintiff and Aggrieved Employees were not paid overtime wages for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, and/or in excess of forty hours in a week, sometimes because all hours that they worked were not recorded, and other times because they were simply not paid for the hours that were recorded.

56.    Upon information and belief, Defendants have a uniform policy and/or practice of staffing their locations based on a labor budget set by the corporate office, which resulted in chronic understaffing such that employees were prevented from taking all uninterrupted meal periods to which they were entitled and/or resulted in them not being paid for all hours worked. Upon information and belief, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their locations based on a labor budget, which discouraged and impeded Plaintiff and Aggrieved Employees from taking all uninterrupted meal periods to which they were entitled and/or were required to perform pre-shift and/or post-shift work for which they were not paid. Plaintiff and Aggrieved Employees would have to continue with their duties, such as serving customers and bringing food from the kitchen, after clocking out for meal periods and/or at the end of their shifts. This would result in Plaintiff and Aggrieved Employees continuing to work for which Defendant did not pay all

hours worked. Defendants did not always permit Plaintiff and Aggrieved Employees to adjust their clock-in and clock-out times so that they could account for and be compensated for this work.

57.    Furthermore, Defendants did not pay Plaintiff and Aggrieved Employees the correct overtime rate for the recorded overtime hours that they generated. Based on information and belief, in addition to an hourly wage, Defendants paid Plaintiff and Aggrieved Employees incentive pay and/or nondiscretionary compensation. However, in violation of the California Labor Code, Defendants failed to incorporate all remunerations, including incentive pay and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Plaintiff and Aggrieved Employees worked overtime and received incentive pay and/or nondiscretionary bonuses, Defendants failed to pay all overtime wages by paying a lower overtime rate than required.

58.    Defendants knew or should have known that, as a result of their policies and/or practices, Plaintiff and Aggrieved Employees were performing work for which Plaintiff and Aggrieved Employees were not paid. Defendants also knew, or should have known, that they did not compensate Plaintiff and Aggrieved Employees for all hours worked. Because Plaintiff and Aggrieved Employees sometimes worked shifts of eight hours a day or more and forty hours a week or more, some of this work performed while clocked out during meal periods and before and/or after shifts qualified for overtime premium pay. Therefore, Plaintiff and Aggrieved Employees were not paid overtime wages for all of the overtime hours they actually worked.

59.    Defendants' failure to pay Plaintiff and Aggrieved Employees the balance of overtime compensation owed, as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Plaintiff and Aggrieved Employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, as well as unpaid overtime pursuant to Sections 558, 1194, and/or 2699(a), (f), and (g).

\\

**FAILURE TO PAY MINIMUM WAGES**

**VIOLATION OF LABOR CODE SECTIONS 1182.12, 1194, 1197, 1197.1, AND 1198**

60.      At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 5 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. tit. 8, § 11050(2)(K) (defining "Hours Worked").

61.      As described above, upon information and belief, Defendants have a uniform policy and/or practice of understaffing and/or staffing their locations based on a labor budget set by the corporate office resulted in chronic understaffing, causing a lack of meal period coverage and leading employees to perform pre-shift and/or post-shift work while off-the-clock or during their meal periods. Other times, Defendants simply did not pay their employees for the hours that were recorded.

62.      Defendants did not pay at least minimum wages for all hours worked by Plaintiff and Aggrieved Employees. To the extent that these unpaid hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, Defendants regularly failed to pay at least minimum wages to Plaintiff and Aggrieved Employees for all of the hours they worked.

63.      Defendants' failure to pay Plaintiff and Aggrieved Employees minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Plaintiff and Aggrieved Employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, pursuant to Sections 1194.2, 1197.1 and/or 2699(a), (f), and (g).

**FAILURE TO PROVIDE AND RECORD MEAL PERIODS**

**VIOLATION OF LABOR CODE SECTIONS 226.7, 512(a), AND 1198**

64.      At all relevant times herein set forth, California Labor Code sections 226.7,

512(a), and 1198, and the applicable IWC Wage Order were applicable to Plaintiff's and Aggrieved Employees' employment by Defendants.

65.  At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five hours per day without providing the employee with a meal period of not less than thirty minutes, except that if the total work period per day of the employee is not more than six hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041-1042 (2012).

66.  At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC. The wage order's meal period requirement is satisfied if "the employee (1) has at least 30 minutes uninterrupted, (2) is free to leave the premises, and (3) is relieved of all duty for the entire period." *Brinker Rest. Corp.*, 53 Cal. 4th at 1036.

67.  At all relevant times herein set forth, Labor Code sections 226.7,  512(a), and 1198, and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty minutes if an employee works over ten hours per day, and if one is not provided, pay an employee one additional hour of pay at the employee's regular rate of compensation, except that if the total hours worked is no more than twelve hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

68.  As stated above, upon information and belief, at all relevant times Defendants had, and continue to have, a company-wide policy and/or practice of understaffing and/or staffing based on a labor budget, which resulted in understaffing and a lack of break coverage, preventing Plaintiff and Aggrieved Employees from taking all timely, uninterrupted meal periods to which they were entitled. Plaintiff and Aggrieved Employees had to work through many of their meal periods, have their meal periods interrupted to return

to work, and/or wait until after they had already worked five hours before taking meal periods in order to adhere to this labor budget and/or understaffed schedules. Additionally, because Defendants sometimes scheduled only one bartender per shift, there was insufficient and/or no break coverage to allow Plaintiff and Aggrieved Employees to be relieved of their duties to take meal periods. As a result, Plaintiff and Aggrieved Employees were prevented from being relieved of all duties in order to take compliant meal periods.

69.     Plaintiff and Aggrieved Employees had to work through part or all of their meal periods, having their meal periods interrupted, and/or wait extended periods of time before taking meal periods. For example, Plaintiff had meal periods that were missed, late, and/or short due to the lack of meal break coverage or would be interrupted while she was clocked out for a meal period, in order to perform work, including but not limited to bringing food to bar patrons and other work responsibilities. At other times, Plaintiff and Aggrieved Employees were simply not permitted to take meal periods either at all or before the end of their fifth hour of work.

70.     In addition, Defendants did not schedule second meal periods and had no policy for permitting Plaintiff and Aggrieved Employees to take second 30-minute meal periods on days that they worked in excess of ten hours in one day. Plaintiff and Aggrieved Employees did not receive second 30-minute meal periods on days that they worked in excess of ten hours in one day. For example, when Plaintiff worked in excess of ten hours in a day, Defendants did not schedule her to take a second meal period and did not provide her with the opportunity to take a second meal period. Instead, Plaintiff was required to continue to work until she clocked out for the day.

71.     Plaintiff and Aggrieved Employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties. An employer's obligation to provide a meal period is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker Rest. Corp.*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.")

> [A]fter the meal break obligation is triggered … an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id.* (citing Cal. Lab. Code § 226.7; Cal. Code. Regs. tit. 8, § 11050(11(A), (B)). Defendants had a company-wide policy of requiring all newly-hired employees to sign blanket meal period waivers at or near their time of hire. Upon information and belief, Defendants took the position that hourly, non-exempt employees had waived their rights to first or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled. Defendants' company-wide use of blanket meal waivers signed at or near the time of hire discouraged and impeded Plaintiff and Aggrieved Employees from taking all meal periods to which they were entitled. That Defendants require employees sign meal period waivers simultaneously at or near their time of hire (as opposed to on a specific workday) renders them invalid and unenforceable, because Defendants' obligations to provide Plaintiff and Aggrieved Employees with meal periods does not arise until Defendants have employed them for a full five hours

72.    At all times herein mentioned, Defendants knew or should have known that, as a result of the restrictive labor budget and policy of failing to schedule second meal periods, Plaintiff and Aggrieved Employees have been required to perform some of their assigned duties during meal periods and that Defendants did not pay Plaintiff and Aggrieved Employees meal period premium wages when meal periods were late, interrupted, and/or missed. As a result, Plaintiff and Aggrieved Employees had to work through some or all of their meal periods, had their meal periods interrupted to return to work, and/or waited extended periods of time before taking meal periods. Plaintiff and Aggrieved Employees were made to work over five hours before Defendants permitted and authorized them to take their meal periods, and their meal periods were cut short and/or taken late so that Plaintiff and Aggrieved Employees could attend to their assigned tasks.

73.    Moreover, upon information and belief, Defendants engaged in a systematic,

FIRST AMENDED PAGA COMPLAINT

company-wide practice and/or policy of not paying meal period premiums for Plaintiff and Aggrieved Employees, regardless of whether they were able to take a compliant meal break, in violation of Labor Code sections 226.7 and 512(a), and the applicable IWC Wage Order. As a result, Defendants failed to provide Plaintiff and Aggrieved Employees with compliant meal periods in violation of California Labor Code sections 226.7 and 512 and failed to pay the full meal period premiums due. Alternatively, to the extent that Defendants did pay meal period premium wages to Plaintiff and Aggrieved Employees, such payments were admissions of Defendants' failure to provide meal periods. Additionally, Defendants paid meal period premiums at the incorrect rates. Because Defendants did not properly calculate Plaintiff's and Aggrieved Employees' regular rates of compensation by failing to include all remunerations, such as nondiscretionary bonuses and incentive pay, any premiums paid for meal period violations were also paid at an incorrect rate and resulted in an underpayment of meal period premium wages.

74.     Defendants' conduct violates California Labor Code sections 226.7, 512(a), and 1198, and the applicable IWC Wage Order. Plaintiff and Aggrieved Employees are therefore entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, as well as unpaid wages, pursuant to Sections 558 and/or 2699(a), (f), and (g).

## FAILURE TO PROVIDE REST PERIODS

### VIOLATION OF LABOR CODE SECTIONS 226.7 AND 1198

75.     At all relevant times herein set forth, California Labor Code sections 226.7 and 1198, and the applicable IWC Wage Order were applicable to Plaintiff and Aggrieved Employees' employment by Defendants.

76.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half hours.

77.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. To comply with its obligation to provide rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016). Pursuant to California Labor Code section 226.7(b) and the applicable IWC Wage Order, Plaintiff and Aggrieved Employees are entitled to recover from Defendants one additional hour of pay at their regular rates of compensation for each work day that a required rest period was not provided.

78.     Upon information and belief, during the relevant time period, Defendants' company-wide policy and practice of understaffing and/or staffing based on a labor budget resulted in understaffing and a lack of break coverage, which prevented Plaintiff and Aggrieved Employees from being relieved of all duty in order to take compliant rest periods. Additionally, Defendants maintained and implemented a company-wide policy and practice requiring that Plaintiff and Aggrieved Employees remain on premises during their rest breaks. As a result, Plaintiff and Aggrieved Employees were prevented from being relieved of all duty in order to take compliant rest periods and instead remained under the control of Defendants. Plaintiff and Aggrieved Employees would work shifts in excess of three and one-half hours, in excess of six hours, and/or in excess or ten hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.

79.     Moreover, upon information and belief, Defendants have also engaged in a systematic, company-wide practice and/or policy of not paying rest period premiums owed when rest periods are not provided. Thus, Defendants denied Plaintiff and Aggrieved Employees rest periods and failed to pay them rest period premium wages due, in violation of Labor Code section 226.7 and the applicable IWC Wage Order. Alternatively, to the extent that Defendants did pay rest period premium wages to Plaintiff and Aggrieved Employees,

such payments were admissions of Defendants' failure to provide rest periods. Additionally, Defendants paid rest period premiums at the incorrect rates. Because Defendants did not properly calculate Plaintiff's and Aggrieved Employees' regular rates of pay by including all remunerations, such as nondiscretionary bonuses and incentive pay, any premiums paid for rest period violations were also paid at an incorrect rate and resulted in an underpayment of rest period premium wages.

80.    Defendants' conduct violates California Labor Code sections 226.7 and 1198 and the applicable IWC Wage Order. Plaintiff and Aggrieved Employees are therefore entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, pursuant to Sections 2699(a), (f), and (g).

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
## AND PAYROLL RECORDS
### VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 226(a), 1174(d), AND 1198

81.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

82.    During the relevant time period, Defendants provided Plaintiff and Aggrieved Employees with uniform, incomplete, and inaccurate wage statements. Defendants failed to provide accurate wage statements for Plaintiff and Aggrieved Employees showing, among other things, gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period as a result of failing to record or pay all hours worked.

83.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the

hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…" Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), Defendants failed to maintain accurate payroll records for Plaintiff and Aggrieved Employees showing the daily hours that they worked and the wages paid thereto as a result of failing to record or pay all hours worked and failing to correctly list the gross wages and net wages earned by them.

84.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. At all relevant times, Defendants failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Plaintiff and Aggrieved Employees in violation of section 1198. Also, in light of Defendants' failure to provide Plaintiff and Aggrieved Employees with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

85.    Plaintiff and Aggrieved Employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, pursuant to Labor Code sections 226, 226.3, 1174.5 and/or 2699(a), (f), and (g).

## FAILURE TO PAY WAGES DURING EMPLOYMENT
## VIOLATION OF LABOR CODE SECTION 204

86.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the first and the fifteenth days, inclusive,

FIRST AMENDED PAGA COMPLAINT

of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth and the twenty-sixth day of the month during which the labor was performed.

87.     At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first and the tenth day of the following month.

88.     At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period.

89.     At all relevant times herein, Defendants failed to pay Plaintiff and Aggrieved Employees all wages due including, but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and/or split shift premiums, within the time periods specified by Labor Code section 204.

90.     Plaintiff and Aggrieved Employees are therefore entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, pursuant to Labor Code section(s) 210 and/or 2699(a), (f), and (g).

**FAILURE TO PAY WAGES UPON TERMINATION**

**VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 201 AND 202**

91.     At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two hours thereafter, unless the employee has given seventy-two hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of

1  quitting.

2      92.    During the relevant time period, on information and belief, Defendants failed to

3  pay Plaintiff and Aggrieved Employees who are no longer employed by Defendants all their

4  earned wages at the time of discharge, or within seventy-two hours of their leaving

5  Defendants' employ in violation of Sections 201 and 202. For example, on November 1,

6  2017, Plaintiff gave Defendants two-week's notice of her intention to quit. Her last day of

7  work was on November 14, 2017, but Defendants did not tender Plaintiff's final wages until

8  three to five days later. In addition, based on information and belief, Defendants had, and

9  continue to have, a company-wide policy and/or practice of paying departing employees their

10  final wages on the next regular pay cycle, instead of adhering to the time requirements set

11  forth in Labor Code sections 201 and 202.

12      93.    Defendants' failure to pay Plaintiff and those Aggrieved Employees who are no

13  longer employed by Defendants their wages earned and unpaid at the time of discharge, or

14  within seventy-two hours of their leaving Defendants' employ, violates Labor Code sections

15  201 and 202. Plaintiff and Aggrieved Employees are therefore entitled to civil penalties,

16  attorneys' fees, costs, and interest thereon, pursuant to Sections 2699(a), (f), and (g).

17  **FAILURE TO PAY SPLIT SHIFT PREMIUMS**

18  **VIOLATION OF LABOR CODE SECTION 1198 AND CALIFORNIA CODE OF**

19  **REGULATIONS TITLE 8, SECTION 11050(4)(C)**

20      94.    California Labor Code section 1198 provides that no employer may employ an

21  employee under conditions of labor that are prohibited by the applicable IWC Wage Order.

22  California Labor Code section 1198 further requires that ". . . the standard conditions of labor

23  fixed by the commission shall be the . . . standard conditions of labor for employees. The

24  employment of any employee . . . under conditions of labor prohibited by the order is

25  unlawful."

26      95.    California Code of Regulations, Title 8, section 11050(4)(C) provides that

27  "[w]hen an employee works a split shift, one (1) hour's pay at the minimum wage shall be

28  paid in addition to the minimum wage for that workday, except when the employee resides at

the place of employment." California Code of Regulations, Title 8, defines a split shift as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

96.     Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(4)(C), because they failed to pay Plaintiff and Aggrieved Employees a split-shift premium when they returned to work for an additional shift in the same day, after having been clocked out for more than thirty minutes (or a period other than bona fide meal or rest periods).

97.     Defendants sometimes scheduled Plaintiff to work split-shifts that were separated by more than one hour of time, but failed to pay her one hour's pay at the minimum wage in addition to the minimum wage for that workday. Upon information and belief, other Aggrieved Employees also worked split shifts separated by more than one hour of time without receiving one additional hour at minimum wage from Defendants for working a split-shift. Accordingly, Defendants required Plaintiff and Aggrieved Employees to work split shifts but failed to pay them an additional hour at minimum wage in violation of California Labor Code section 1198.

98.     Defendants' failure to provide Plaintiff and Aggrieved Employees with split-shift pay when they returned to work for an additional shift in the same day, after having been clocked out for more than an hour, violates California Labor Code section 1198 and California Code of Regulations Title 8, Section 11050(4)(C). Plaintiff and Aggrieved Employees are therefore entitled to recover penalties pursuant to Sections 1194 and/or 2699(a), (f), and (g).

**FAILURE TO REIMBURSE NECESSARY BUSINESS EXPENSES**

**VIOLATION OF LABOR CODE SECTION 2802**

99.     At all times herein set forth, California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).

Wage Order No. 5, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

100.    During the relevant time period, Defendants, on a company-wide basis, required that Plaintiff and Aggrieved Employees utilize their own personal cell phones to carry out their job duties, but Defendants failed to reimburse them for the costs of their cell phone plans and data charges. For example, Plaintiff was required to keep her personal cellular phone with her at all times while at work, in order to carry out her duties, including communicating with management regarding work-related matters, such as requesting re-stocking of liquor or needing to be relieved for a meal or rest period. Although Defendants required Plaintiff to regularly utilize her personal cellular phone to carry out work-related responsibilities, Defendants failed to reimburse her for this cost. Defendants could have provided Plaintiff and Aggrieved Employees with the actual tools and materials required for use on the job, including company phones, but instead, Defendants passed this operating cost off onto their employees.

101.    Defendants' policy, practice, and/or procedure of passing their operating costs on to Plaintiff and Aggrieved Employees by requiring that they use their own personal cellular phones for work is in violation of California Labor Code section 2802. Plaintiff and Aggrieved Employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f), and (g).

**FAILURE TO PROVIDE SEATING**

**VIOLATION OF LABOR CODE SECTION 1198 AND CALIFORNIA CODE OF REGULATIONS TITLE 8, SECTION 11050(14)**

102.    California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor

fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

103.    California Code of Regulations, Title 8, section 11050(14) provides that "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.  When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

104.    Although some aggrieved employees work at the front desks and/or concierges and perform tasks that reasonably permit the use of seats, such as checking in guests, greeting guests, handling complaints, and performing register transactions, Defendants refused to provide seats in violation of the applicable wage order and California Labor Code section 1198. Additionally, while porters are required to carry guests' luggage to and from their hotel rooms, there is often downtime in between assisting guests such that the porters can be seated while waiting.

105.    Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(14) because Aggrieved Employees were not permitted to sit, even if they were not engaged in active duties. They were not permitted to sit, even when it would not interfere with the performance of their duties, nor were they provided with suitable seats.

106.    Defendants' failure to provide Aggrieved Employees with suitable seating violates California Labor Code section 1198 and California Code of Regulations Title 8, Section 11050(14). Aggrieved Employees are therefore entitled to recover penalties pursuant to Sections 1194 and/or 2699(a), (f), and (g).

### REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

\\

**PRAYER FOR RELIEF**

Plaintiff, on behalf of the State of California and all other Aggrieved Employees, prays for relief and judgment against Defendants, jointly and severally, as follows:

107.    For civil penalties and attorneys' fees in excess of twenty-five thousand dollars ($25,000). Plaintiff reserves the right to amend her prayer for relief to seek a different amount.

**As to the First Cause of Action**

108.    That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and/or other Aggrieved Employees: 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512 and 1198 (by failing to provide all meal and/or rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage statements); 1174(d) and 1198 (by failing to maintain accurate and complete payroll records); 1198 (by failing to maintain accurate and complete time records); 204 (by failing timely to pay all earned wages during employment); 201 and 202 (by failing timely to pay all earned wages upon termination); 1198 and California Code of Regulations Title 8, section 11050(4)(C) (by failing to pay split shift premiums and failing to provide suitable seating); and 2802 (by failing to reimburse employees for business expenses necessarily incurred).

109.    For civil penalties pursuant to California Labor Code sections 210, 226.3, 558, 1174.5, 1197.1, 2699(a) and/or 2699(f) and (g), for violations of California Labor Code sections 201-204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802 as well as all applicable IWC Wage Orders;

110.    For unpaid wages pursuant to California Labor Code section 558, for violations of California Labor Code sections 510 and/or 512(a);

111.    For attorneys' fees and costs pursuant to California Labor Code sections 1194(a), 2699(g)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201-204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

112.   For pre-judgment and post-judgment interest as provided by law; and

113.   For such other and further relief as the Court may deem equitable and appropriate.

Dated:  December 21, 2018                    Respectfully submitted,

LAW OFFICES OF MARK YABLONOVICH

By:  _____
Mark Yablonovich, Esq.
Attorneys for Plaintiff Kendra Sloan

First Amended PAGA Complaint

EXHIBIT 1

LAW OFFICES OF

# MARK YABLONOVICH

1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508

TELEPHONE: (310) 286-0246
FACSIMILE: (310) 407-5391

July 31, 2018

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/198)

Subject:    *Kendra Sloan v. IHG Management Maryland LLC, et al.*

Dear PAGA Administrator:

This office represents Kendra Sloan in connection with her claims under the California Labor
Code. Ms. Sloan was an employee of either IHG MANAGEMENT MARYLAND LLC and/or
IHG MANAGEMENT (MARYLAND) LLC. For purposes of this letter, Ms. Sloan refers to
these entities together as "IHG."

The employer may be contacted directly:

IHG MANAGEMENT MARYLAND LLC
11580 GREAT OAKS WAY
ALPHARETTA, GA 30022

IHG MANAGEMENT (MARYLAND) LLC
THREE RAVINIA DRIVE, SUITE 100
ATLANTA, GA 30346

Ms. Sloan intends to seek civil penalties, attorney's fees, costs, and other available relief for
violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the
Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Sloan seeks relief on behalf
of herself, the State of California, and other persons who are or were employed by IHG in
California as a non-exempt, hourly-paid employee and who received or should have received at
least one wage statement ("aggrieved employees"). This letter is sent in compliance with the
notice and reporting requirements of California Labor Code section 2699.3.

IHG employed Ms. Sloan from approximately July 10, 2017 to November 14, 2017 as an hourly-
paid Bartender at Hotel Indigo in Downtown Los Angeles. Ms. Sloan typically worked
approximately eight (8) to twelve (12) hours or more per day, six (6) to seven (7) days per week,
and forty-five (45) hours or more per week. At the time Ms. Sloan's employment with IHG
ended, she earned approximately $16.81 per hour. Her job duties included crafting cocktails,
taking food and drink orders for patrons, and serving food and drink to patrons.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 2 of 14

_____

IHG committed one or more of the following Labor Code violations against Ms. Sloan, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

## IHG's Company-Wide and Uniform Payroll and Human Resources Practices

IHG is a Maryland limited liability company that owns and operates numerous large hotel brands such as Hotel Indigo, Holiday Inn, Crowne Plaza, and others, with approximately 100 current and former employees who worked at the Hotel Indigo locations in California. Upon information and belief, IHG maintains a centralized Human Resources (HR) department at its corporate headquarters in Alpharetta or Atlanta, Georgia, for all non-exempt, hourly-paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. At all relevant times, IHG issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Ms. Sloan and other aggrieved employees, regardless of their location or position.

Upon information and belief, IHG maintains a centralized Payroll department at its corporate headquarters in Alpharetta or Atlanta, Georgia, which processes payroll for all non-exempt, hourly paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. Further, IHG issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location, position, or manner in which each employee's employment ended. IHG's centralized Payroll department processed payroll for non-exempt, hourly paid employees in the same manner throughout California. In other words, IHG utilized the same methods and formulas when calculating wages due to Ms. Sloan and other aggrieved employees in California.

## Violation of California Labor Code sections 510 and 1198

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that

_____

[1] These facts, theories, and claims are based on Ms. Sloan's experience and counsel's review of those records currently available relating to Ms. Sloan's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Sloan reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 3 of 14

---

employers are required to pay employees working more than twelve (12) hours in a day overtime
compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of
pay includes all remuneration for employment paid to, or on behalf of, the employee, including
non-discretionary bonuses and incentive pay.

IHG willfully failed to pay all overtime wages owed to Ms. Sloan and other aggrieved
employees. During the relevant time period, Ms. Sloan and other aggrieved employees were not
paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in
excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, sometimes
because all hours that they worked were not recorded, and other times because they were simply
not paid for the hours that were recorded.

On information and belief, IHG has a company-wide policy of staffing their locations based on a
labor budget set by the corporate office. IHG's use of labor budgets resulted in chronic
understaffing, such that there were too few employees on duty to handle the workload and
provide uninterrupted meal periods. As a result of IHG's systemic utilization of labor budgets
and preference for profitability over compliance with labor laws, Ms. Sloan and other aggrieved
employees were not provided adequate meal break coverage to allow them to be relieved of their
duties for compliant meal breaks and/or were required to perform pre-shift and/or post-shift work
while off-the-clock. Thus, Ms. Sloan and other aggrieved employees would have to continue
with their duties, such as serving customers and bringing food from the kitchen, after clocking
out for meal periods and at the end of their shifts. This would result in Ms. Sloan and other
aggrieved employees continuing to work while off-the-clock after their scheduled shifts for an
hour or longer, on a regular basis. IHG would not always permit Ms. Sloan and other aggrieved
employees to adjust their punch-in or punch-out times so that they could account for and be
compensated for this off-the-clock work.

IHG knew or should have known that, as a result of its policies and practices, Ms. Sloan and
other aggrieved employees were performing their assigned duties off-the-clock, and were
suffered or permitted to perform work for which they were not paid. IHG also knew, or should
have known, that it did not compensate Ms. Sloan and other aggrieved employees for off-the-
clock work. Because Ms. Sloan and other aggrieved employees regularly worked shifts of eight
(8) hours a day or more or forty (40) hours a week or more, some of the off-the-clock work
qualified for overtime premium pay. At other times, IHG simply did not pay for all the hours that
were recorded. Therefore, Ms. Sloan and other aggrieved employees were not paid overtime
wages for all of the overtime hours they actually worked. IHG's failure to pay Ms. Sloan and
other aggrieved employees the balance of overtime compensation, as required by California law,
violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, IHG did not pay other aggrieved employees the correct overtime rate for the
recorded overtime hours that they worked. In addition to an hourly wage, IHG paid other
aggrieved employees incentive pay and/or nondiscretionary bonuses. However, in violation of
the California Labor Code, IHG failed to incorporate all remunerations, including incentive pay

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 4 of 14

_____

and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received incentive pay and/or nondiscretionary bonuses, IHG failed to pay all overtime wages by paying a lower overtime rate than required.

Based on the foregoing, Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

### Violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

As set forth above, on information and belief, IHG's policy of staffing their locations based on a labor budget set by the corporate office resulted in chronic understaffing, causing a lack of meal break coverage and leading employees to perform pre-shift and/or post-shift work while off-the-clock or during their meal breaks.

IHG did not pay minimum wages for all hours worked, e.g., off-the-clock hours that Ms. Sloan and other aggrieved employees worked, including during meal periods, pre- and post-shift work. IHG also sometimes did not pay for all the hours recorded. To the extent that the off-the-clock work and/or recorded hours did not qualify for overtime premium payment, IHG did not pay at least minimum wages for those hours worked off-the-clock or were recorded in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, IHG regularly failed to pay at least minimum wages to Ms. Sloan and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Ms. Sloan and other aggrieved employees are therefore entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1197.1 and/or 2699(a), (f)-(g).

### Violation of California Labor Code sections 226.7, 512(a), and 1198

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest periods and to pay employees one (1) additional hour of pay at the employee's regular rate for each workday that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 5 of 14

(5) hours per day without providing the employee with an uninterrupted meal period of not less
than thirty (30) minutes, except that if the total work period per day of the employee is not more
than six (6) hours, the meal period may be waived by mutual consent of both the employer and
the employee. Under California law, first meal periods must start after no more than five hours.
*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections
226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a
second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours
per day, except that if the total hours worked is no more than twelve (12) hours, the second meal
period may be waived by mutual consent of the employer and the employee only if the first meal
period was not waived.

Under California law, an employer cannot evade meal break requirements via the use of "on-
duty" meal agreements because it understaffs its locations. *Abdullah v. U.S. Sec. Assocs.,* 2011
U.S. Dist. LEXIS 156685 (C.D. Cal. Jan. 11, 2011).

California Labor Code section 226.7 provides that no employer shall require an employee to
work during any rest period mandated by an applicable order of the California IWC. The
applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all
employees to take rest periods, which insofar as practicable shall be in the middle of each work
period" and that the "rest period time shall be based on the total hours worked daily at the rate of
ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily
work time is less than three and one-half (3½) hours. To comply with its obligation to provide
rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an
employer must "relinquish any control over how employees spend their break time, and relieve
their employees of all duties—including the obligation that an employee remain on call. A rest
period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc*., 2 Cal.
5th 257, 269-270 (2016).

As stated, on information and belief, IHG has a company-wide policy of staffing based on a
labor budget, which resulted in understaffing and a lack of break coverage, preventing Ms. Sloan
and other aggrieved employees from taking all timely, uninterrupted meal periods to which they
were entitled. As a result of these practices and/or policies, Ms. Sloan and other aggrieved
employees continued to perform their assigned duties without being able to take timely,
compliant meal periods, in order to adhere to this labor budget. Additionally, because IHG
sometimes scheduled only one bartender per shift, there was insufficient and/or no break
coverage to allow Ms. Sloan and other aggrieved employees to be relieved of their duties to take
meal periods. Instead, Ms. Sloan and other aggrieved employees were required to work
throughout their entire shifts, without taking compliant meal or rest periods. Ms. Sloan and other
aggrieved employees had to work through part or all of their meal periods, have their meal
periods interrupted, and/or wait extended periods of time before taking meal periods. For
example, Ms. Sloan had meal periods that were missed, late, and/or short due to the lack of meal
break coverage or would be constantly interrupted while she was clocked out for a meal period,
in order to bringout food for bar patrons and other work responsibilities. At other times, Ms.

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 6 of 14

_____

Sloan and other employees were simply not permitted to take meal periods either at all or before their fifth hour of work.

In addition, IHG also systematically, and on a company-wide basis, did not schedule second meal periods and had no policy for permitting Ms. Sloan and other aggrieved employees to take uninterrupted second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. As a result of these practices and/or policies, on days that Ms. Sloan and other aggrieved employees worked in excess of ten (10) hours, they were not provided with second 30-minute meal periods. For example, during Ms. Sloan's employment she would work shifts that were in excess of ten (10) hours, including twelve (12) to fourteen (14) hour shifts, and yet was not permitted to take a second meal period.

IHG had a company-wide policy of requiring all newly-hired employees to sign blanket Meal Period Waivers at or near their time of hire. Upon information and belief, IHG took the position that non-exempt, hourly-paid employees had waived their rights to first and/or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled. IHG's company-wide use of blanket meal waivers signed at or near the time of hire discouraged and impeded Ms. Sloan and other aggrieved employees from taking all meal periods to which they were entitled. Additionally, an employer's obligation to provide a meal break is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id.* (citing Cal. Lab. Code § 226.7; Wage Order No. 5, subd. 11(A), (B)). That IHG requires employees sign Meal Waivers simultaneously at or near their time of hire (as opposed to on a specific workday) renders them invalid and unenforceable, because IHG's obligation to provide Ms. Sloan and other aggrieved employees with meal breaks does not arise until it has employed them for a full five (5) hours.

To the extent IHG required its employees to sign written "on-duty" meal period agreements, such agreements were invalid as the nature of the work performed by Ms. Sloan and other aggrieved employees did not necessitate an "on-duty" meal period under California law. IHG could have provided break coverage for its employees or staffed more than one employee at its work stations, but chose not to do so.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 7 of 14

IHG knew or should have known that as a result of these policies, Ms. Sloan and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods and that they did not receive timely meal periods. As a result, Ms. Sloan and other aggrieved employees had to work through all or part of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods.

As with meal periods, IHG's policies and/or practices prevented Ms. Sloan and other aggrieved employees from being relieved of all duty to take compliant rest periods. As a result, Ms. Sloan and other aggrieved employees would frequently work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted ten (10) minute rest periods to which they were entitled. Ms. Sloan was not able to take rest breaks due to the pressure IHG placed on her to meet workload demands and due to a lack of break coverage for employees.

IHG also engaged in a systematic, company-wide practice and/or policy of not paying all meal and rest period premiums owed when compliant meal and rest periods were not provided. Because of this practice and/or policy, Ms. Sloan and other aggrieved employees have not received premium pay for meal and rest periods violations. To the extent that IHG did pay meal and/or rest period premium wages to other aggrieved employees, such payments were admissions of its failure to provide meal and rest periods. Additionally, meal and/or rest period premium wages were paid at the incorrect rates. Because IHG did not properly calculate other aggrieved employees' regular rates of pay by including all remunerations, such as nondiscretionary bonuses and/or incentive pay, any premiums paid for meal and/or rest period violations were also paid at an incorrect rate and resulted in an underpayment of meal and/or rest period premium wages.

Accordingly, IHG failed to provide all meal and rest periods and/or pay all meal and rest premiums in violation of California Labor Code sections 226.7, 512, and 1198. Ms. Sloan and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, underpaid wages, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

## Violation of California Labor Code sections 226(a), 1174(d), and 1198

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. IHG has not provided Ms. Sloan and other aggrieved employees with properly itemized wage statements. Moreover, an aggrieved employee may seek civil penalties under Labor Code section 2699 for violations of wage statement requirements without the need to establish injury. *Lopez v. Friant & Associates*, LLC, 15 Cal. App. 5th 773 (2017).

Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 8 of 14

citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

IHG has knowingly and intentionally provided Ms. Sloan and other aggrieved employees with incomplete and inaccurate wage statements. Specifically, IHG violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9). Because IHG did not record the hours Ms. Sloan and other aggrieved employees worked while off-the-clock, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5). IHG also failed to list the total hours worked by Ms. Sloan and other aggrieved employees for work performed while off-the-clock in violation of section 226(a)(2). Additionally, because IHG did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and premium wages, IHG did not list the correct amount of gross wages and net wages earned by other aggrieved employees in compliance with section 226(a)(1) and (5). IHG also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9). Furthermore, because IHG failed to pay all meal and rest period premiums to Ms. Sloan and other aggrieved employees, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5).

Separate from these violations, IHG issued uniform wage statements to Ms. Sloan and other aggrieved employees that fail to list the correct name and address of the legal entity of the actual employer, in violation of Labor Code section 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer in the future for various reasons, including, filing an administrative, judicial claim, or other action to seek relief against their employer, obtain unemployment benefits, etc. Ms. Sloan's wage statements list an entity named "IHG Management Maryland LLC" with the address of "11580 Great Oaks Way, Alpharetta, Georgia 30022." However, there is no such entity listed on the California Secretary of State's website; instead, a similarly-named company appears to be "IHG Management (Maryland) LLC," located at "Three Ravinia Drive, Suite 100, Atlanta, GA 30346." Adding to the confusion, Ms. Sloan's Wage Theft Notice provided to her at the time of hire lists "IHG – Hotel Indigo Los Angeles Downtown," an entity not listed on the California Secretary of State's website, located at "899 Francisco Street Los Angeles CA 90017." *See example of violative paystub below.*

LAW OFFICES OF

# MARK YABLONOVICH

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 9 of 14



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list  the last four digits of the employee's social security number or an employee identification number other than a social security number; failing to list total hours; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), IHG willfully failed to maintain accurate payroll records for Ms. Sloan and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and failing to correctly list the gross wages and net wages earned by them.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, IHG failed, on a company-wide basis, to keep accurate records of shift and meal period start and stop times for Ms. Sloan and other aggrieved employees, in violation of section 1198.

Because IHG failed to provide, among other things, the accurate number of total hours worked, as well as gross wages earned, and net wages earned on wage statements, Ms. Sloan and other

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 10 of 14

___

aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full and were given confusing information to contact their employer. Instead, Ms. Sloan and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Sloan and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(a), 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code section 204</u>**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, IHG failed to pay Ms. Sloan and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Sloan and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code sections 201, 202, and 203</u>**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 11 of 14

___

IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no longer employed by IHG all their earned wages at the time of discharge, or within seventy-two (72) hours of their leaving IHG's employ in violation of California Labor Code sections 201 and 202. For example, on November 1, 2017, Ms. Sloan gave IHG two weeks' notice of her intention to quit. Her last day of work was on November 14, 2017, but IHG did not tender Ms. Sloan's final wages until three (3) to five (5) days later. In addition, on information and belief, IHG has a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202. As previously stated, although Ms. Sloan provided IHG with more than seventy-two (72) hours' notice of her intention to quit, IHG failed to pay Ms. Sloan her final wages on her last day of work, in violation of Labor Code section 202.

In addition, IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no longer employed by IHG all their earned wages, at the time of discharge, or within seventy-two (72) hours of their leaving IHG's employ including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages.

Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code section 1198 and California Code of Regulations Title 8, section 11050 subdivision 4(C)**

California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11050(4)(C) provides that "[w]hen an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." California Code of Regulations, Title 8, defines a split shift as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

IHG willfully violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(4)(C), because IHG failed to pay Ms. Sloan and other aggrieved employees a split-shift premium when they returned to work for an additional shift in the same day, after having been clocked out for more than an hour.

IHG sometimes scheduled Ms. Sloan to work double-shifts that were separated by more than one (1) hour of time, but failed to pay her one (1) hour's pay at the minimum wage in addition to the

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 12 of 14

---

minimum wage for that workday. Upon information and belief, other aggrieved employees also
worked double shifts separated by more than one (1) hour of time without receiving one
additional hour at minimum wage from IHG for working a split-shift. Accordingly, IHG required
Ms. Sloan and other aggrieved employees to work split shifts but failed to pay them an additional
hour at minimum wage in violation of California Labor Code section 1198.

IHG's failure to provide Ms. Sloan and other aggrieved employees with split-shift pay when they
returned to work for an additional shift in the same same day, after having been clocked out for more
than an hour, violates California Labor Code section 1198 and California Code of Regulations
Title 8, Section 11050(4)(C). Ms. Sloan and other aggrieved employees are therefore entitled to
recover penalties pursuant to sections 1194 and/or 2699(a), (f)-(g).

## Violation of California Labor Code section 2802

California Labor Code section 2802 requires employers to pay for all necessary expenditures and
losses incurred by the employee in the performance of his or her job. The purpose of Labor Code
section 2802 is to prevent employers from passing off their cost of doing business and operating
expenses on to their employees. *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137,
1144 (2014). The applicable wage order provides that: "[w]hen tools or equipment are required
by the employer or are necessary to the performance of a job, such tools and equipment shall be
provided and maintained by the employer, except that an employee whose wages are at least two
(2) times the minimum wage provided herein may be required to provide and maintain hand
tools and equipment customarily required by the trade or craft."

During the relevant time period, IHG, on a company-wide basis, required that Ms. Sloan and
other aggrieved employees utilize their own personal cell phones to carry out their job duties, but
IHG failed to reimburse them for the costs of their cell phone plans and data charges. For
example, Ms. Sloan was required to keep her personal cellular phone with her at all times while
at work, in order to carry out her duties, such as communicating with management regarding
work-related matters, such as requesting re-stocking of liquor or needing to be relieved for a
meal or rest period. Although IHG required Ms. Sloan to regularly utilize her personal cellular
phone to carry out work-related responsibilities, IHG failed to reimburse her for this cost. IHG
could have provided Ms. Sloan and other aggrieved employees with the actual tools and
materials required for use on the job, including company phones, but instead, IHG passed this
operating cost off onto Ms. Sloan and other aggrieved employees.

IHG's policy, practice, and/or procedure of passing its operating costs on to Ms. Sloan and other
aggrieved employees by requiring that they use their own personal cellular phones for work is in
violation of California Labor Code section 2802. Ms. Sloan and other aggrieved employees are
entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code
section 2699(a), (f)-(g).

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 13 of 14

___

## California Labor Code section 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." IHG, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Sloan's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Sloan seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Sloan, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against IHG for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Ms. Sloan seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 14 of 14

_____

Thank you for your attention to this matter. If you have any questions, please contact me at the phone number or address below:

Mark Yablonovich
LAW OFFICES OF MARK YABLONOVICH
1875 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 286-0246

Best Regards,

Mark Yablonovich

Copy: IHG MANAGEMENT MARYLAND LLC (via U.S. Certified Mail); IHG MANAGEMENT (MARYLAND) LLC (via U.S. Certified Mail)

EXHIBIT 2

LAW OFFICES OF

# MARK YABLONOVICH

1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508

TELEPHONE: (310) 286-0246
FACSIMILE: (310) 407-5391

October 16, 2018

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/198)

Subject:    *Kendra Sloan v. IHG Management Maryland LLC, et al.*
            LWDA Case No. LWDA-CM-603065-18
            Supplemental Notice

Dear PAGA Administrator:

This office represents Kendra Sloan in connection with her claims under the California Labor Code. Ms. Sloan was an employee of IHG MANAGEMENT MARYLAND LLC and/or IHG MANAGEMENT (MARYLAND) LLC. For purposes of this letter, Ms. Sloan refers to these entities together as "IHG."

This letter is intended to supplement the previously submitted PAGA notice on July 31, 2018, by including an additional claim for IHG's failure to provide suitable seating in violation of Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(14). Ms. Sloan's July 31, 2018 Notice is enclosed and incorporated herein.

The employer may be contacted directly at the following addresses:

IHG MANAGEMENT MARYLAND LLC
11580 GREAT OAKS WAY
ALPHARETTA, GA 30022

IHG MANAGEMENT (MARYLAND) LLC
THREE RAVINIA DRIVE, SUITE 100
ATLANTA, GA 30346

Ms. Sloan intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Sloan seeks relief on behalf of herself, the State of California, and other persons who are or were employed by IHG in California as a non-exempt, hourly-paid employee and who received or should have received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 2 of 14

IHG employed Ms. Sloan from approximately July 10, 2017 to November 14, 2017 as an hourly-paid Bartender at Hotel Indigo in Downtown Los Angeles. Ms. Sloan typically worked approximately eight (8) to twelve (12) hours or more per day, six (6) to seven (7) days per week, and forty-five (45) hours or more per week. At the time Ms. Sloan's employment with IHG ended, she earned approximately $16.81 per hour. Her job duties included crafting cocktails, taking food and drink orders for patrons, and serving food and drink to patrons.

IHG committed one or more of the following Labor Code violations against Ms. Sloan, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

**<u>IHG's Company-Wide and Uniform Payroll and Human Resources Practices</u>**

IHG is a Maryland limited liability company that owns and operates numerous large hotel brands such as Hotel Indigo, Holiday Inn, Crowne Plaza, and others, with approximately 100 current and former employees who worked at the Hotel Indigo locations in California. Upon information and belief, IHG maintains a centralized Human Resources (HR) department at its corporate headquarters in Alpharetta or Atlanta, Georgia, for all non-exempt, hourly-paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. At all relevant times, IHG issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Ms. Sloan and other aggrieved employees, regardless of their location or position.

Upon information and belief, IHG maintains a centralized Payroll department at its corporate headquarters in Alpharetta or Atlanta, Georgia, which processes payroll for all non-exempt, hourly paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. Further, IHG issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location, position, or manner in which each employee's employment ended. IHG's centralized Payroll department processed payroll for non-exempt, hourly paid employees in the same manner throughout California. In other words, IHG utilized the same methods and formulas when calculating wages due to Ms. Sloan and other aggrieved employees in California.

---

[1] These facts, theories, and claims are based on Ms. Sloan's experience and counsel's review of those records currently available relating to Ms. Sloan's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Sloan reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

LAW OFFICES OF

**M A R K   Y A B L O N O V I C H**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 3 of 14

---

## <u>Violation of California Labor Code sections 510 and 1198</u>

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

IHG willfully failed to pay all overtime wages owed to Ms. Sloan and other aggrieved employees. During the relevant time period, Ms. Sloan and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, sometimes because all hours that they worked were not recorded, and other times because they were simply not paid for the hours that were recorded.

On information and belief, IHG has a company-wide policy of staffing their locations based on a labor budget set by the corporate office. IHG's use of labor budgets resulted in chronic understaffing, such that there were too few employees on duty to handle the workload and provide uninterrupted meal periods. As a result of IHG's systemic utilization of labor budgets and preference for profitability over compliance with labor laws, Ms. Sloan and other aggrieved employees were not provided adequate meal break coverage to allow them to be relieved of their duties for compliant meal breaks and/or were required to perform pre-shift and/or post-shift work while off-the-clock. Thus, Ms. Sloan and other aggrieved employees would have to continue with their duties, such as serving customers and bringing food from the kitchen, after clocking out for meal periods and at the end of their shifts. This would result in Ms. Sloan and other aggrieved employees continuing to work while off-the-clock after their scheduled shifts for an hour or longer, on a regular basis. IHG would not always permit Ms. Sloan and other aggrieved employees to adjust their punch-in or punch-out times so that they could account for and be compensated for this off-the-clock work.

IHG knew or should have known that, as a result of its policies and practices, Ms. Sloan and other aggrieved employees were performing their assigned duties off-the-clock, and were suffered or permitted to perform work for which they were not paid. IHG also knew, or should have known, that it did not compensate Ms. Sloan and other aggrieved employees for off-the-clock work. Because Ms. Sloan and other aggrieved employees regularly worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of the off-the-clock work qualified for overtime premium pay. At other times, IHG simply did not pay for all the hours that were recorded. Therefore, Ms. Sloan and other aggrieved employees were not paid overtime

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 4 of 14

_____

wages for all of the overtime hours they actually worked. IHG's failure to pay Ms. Sloan and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, IHG did not pay other aggrieved employees the correct overtime rate for the recorded overtime hours that they worked. In addition to an hourly wage, IHG paid other aggrieved employees incentive pay and/or nondiscretionary bonuses. However, in violation of the California Labor Code, IHG failed to incorporate all remunerations, including incentive pay and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received incentive pay and/or nondiscretionary bonuses, IHG failed to pay all overtime wages by paying a lower overtime rate than required.

Based on the foregoing, Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198</u>**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

As set forth above, on information and belief, IHG's policy of staffing their locations based on a labor budget set by the corporate office resulted in chronic understaffing, causing a lack of meal break coverage and leading employees to perform pre-shift and/or post-shift work while off-the-clock or during their meal breaks.

IHG did not pay minimum wages for all hours worked, e.g., off-the-clock hours that Ms. Sloan and other aggrieved employees worked, including during meal periods, pre- and post-shift work. IHG also sometimes did not pay for all the hours recorded. To the extent that the off-the-clock work and/or recorded hours did not qualify for overtime premium payment, IHG did not pay at least minimum wages for those hours worked off-the-clock or were recorded in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, IHG regularly failed to pay at least minimum wages to Ms. Sloan and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Ms. Sloan and other aggrieved employees are therefore entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1197.1 and/or 2699(a), (f)-(g).

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 5 of 14

_____

**<u>Violation of California Labor Code sections 226.7, 512(a), and 1198</u>**

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest periods and to pay employees one (1) additional hour of pay at the employee's regular rate for each workday that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Under California law, an employer cannot evade meal break requirements via the use of "on-duty" meal agreements because it understaffs its locations. *Abdullah v. U.S. Sec. Assocs.,* 2011 U.S. Dist. LEXIS 156685 (C.D. Cal. Jan. 11, 2011).

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours. To comply with its obligation to provide rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

As stated, on information and belief, IHG has a company-wide policy of staffing based on a labor budget, which resulted in understaffing and a lack of break coverage, preventing Ms. Sloan and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. As a result of these practices and/or policies, Ms. Sloan and other aggrieved employees continued to perform their assigned duties without being able to take timely, compliant meal periods, in order to adhere to this labor budget. Additionally, because IHG sometimes scheduled only one bartender per shift, there was insufficient and/or no break

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 6 of 14

---

coverage to allow Ms. Sloan and other aggrieved employees to be relieved of their duties to take meal periods. Instead, Ms. Sloan and other aggrieved employees were required to work throughout their entire shifts, without taking compliant meal or rest periods. Ms. Sloan and other aggrieved employees had to work through part or all of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods. For example, Ms. Sloan had meal periods that were missed, late, and/or short due to the lack of meal break coverage or would be constantly interrupted while she was clocked out for a meal period, in order to bringout food for bar patrons and other work responsibilities. At other times, Ms. Sloan and other employees were simply not permitted to take meal periods either at all or before their fifth hour of work.

In addition, IHG also systematically, and on a company-wide basis, did not schedule second meal periods and had no policy for permitting Ms. Sloan and other aggrieved employees to take uninterrupted second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. As a result of these practices and/or policies, on days that Ms. Sloan and other aggrieved employees worked in excess of ten (10) hours, they were not provided with second 30-minute meal periods. For example, during Ms. Sloan's employment she would work shifts that were in excess of ten (10) hours, including twelve (12) to fourteen (14) hour shifts, and yet was not permitted to take a second meal period.

IHG had a company-wide policy of requiring all newly-hired employees to sign blanket Meal Period Waivers at or near their time of hire. Upon information and belief, IHG took the position that non-exempt, hourly-paid employees had waived their rights to first and/or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled. IHG's company-wide use of blanket meal waivers signed at or near the time of hire discouraged and impeded Ms. Sloan and other aggrieved employees from taking all meal periods to which they were entitled. Additionally, an employer's obligation to provide a meal break is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id*. (citing Cal. Lab. Code § 226.7; Wage Order No. 5, subd. 11(A), (B)). That IHG requires employees sign Meal Waivers simultaneously at or near their time of hire (as opposed to on a specific workday) renders them invalid and unenforceable, because IHG's obligation to provide Ms. Sloan and other aggrieved employees with meal breaks does not arise until it has employed

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 7 of 14

_____

them for a full five (5) hours.

To the extent IHG required its employees to sign written "on-duty" meal period agreements,
such agreements were invalid as the nature of the work performed by Ms. Sloan and other
aggrieved employees did not necessitate an "on-duty" meal period under California law. IHG
could have provided break coverage for its employees or staffed more than one employee at its
work stations, but chose not to do so.

IHG knew or should have known that as a result of these policies, Ms. Sloan and other aggrieved
employees were prevented from being relieved of all duties and required to perform some of
their assigned duties during meal periods and that they did not receive timely meal periods. As a
result, Ms. Sloan and other aggrieved employees had to work through all or part of their meal
periods, have their meal periods interrupted, and/or wait extended periods of time before taking
meal periods.

As with meal periods, IHG's policies and/or practices prevented Ms. Sloan and other aggrieved
employees from being relieved of all duty to take compliant rest periods. As a result, Ms. Sloan
and other aggrieved employees would frequently work shifts in excess of 3.5 hours, in excess of
6 hours, and/or in excess of 10 hours without receiving all uninterrupted ten (10) minute rest
periods to which they were entitled. Ms. Sloan was not able to take rest breaks due to the
pressure IHG placed on her to meet workload demands and due to a lack of break coverage for
employees.

IHG also engaged in a systematic, company-wide practice and/or policy of not paying all meal
and rest period premiums owed when compliant meal and rest periods were not provided.
Because of this practice and/or policy, Ms. Sloan and other aggrieved employees have not
received premium pay for meal and rest periods violations. To the extent that IHG did pay meal
and/or rest period premium wages to other aggrieved employees, such payments were
admissions of its failure to provide meal and rest periods. Additionally, meal and/or rest period
premium wages were paid at the incorrect rates. Because IHG did not properly calculate other
aggrieved employees' regular rates of pay by including all remunerations, such as
nondiscretionary bonuses and/or incentive pay, any premiums paid for meal and/or rest period
violations were also paid at an incorrect rate and resulted in an underpayment of meal and/or rest
period premium wages.

Accordingly, IHG failed to provide all meal and rest periods and/or pay all meal and rest
premiums in violation of California Labor Code sections 226.7, 512, and 1198. Ms. Sloan and
other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, underpaid
wages, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

## **Violation of California Labor Code sections 226(a), 1174(d), and 1198**

California Labor Code section 226(a) requires employers to make, keep and provide true,

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 8 of 14

---

accurate, and complete employment records. IHG has not provided Ms. Sloan and other aggrieved employees with properly itemized wage statements. Moreover, an aggrieved employee may seek civil penalties under Labor Code section 2699 for violations of wage statement requirements without the need to establish injury. *Lopez v. Friant & Associates*, LLC, 15 Cal. App. 5th 773 (2017).

Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

IHG has knowingly and intentionally provided Ms. Sloan and other aggrieved employees with incomplete and inaccurate wage statements. Specifically, IHG violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9). Because IHG did not record the hours Ms. Sloan and other aggrieved employees worked while off-the-clock, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5). IHG also failed to list the total hours worked by Ms. Sloan and other aggrieved employees for work performed while off-the-clock in violation of section 226(a)(2). Additionally, because IHG did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and premium wages, IHG did not list the correct amount of gross wages and net wages earned by other aggrieved employees in compliance with section 226(a)(1) and (5). IHG also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9). Furthermore, because IHG failed to pay all meal and rest period premiums to Ms. Sloan and other aggrieved employees, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5).

Separate from these violations, IHG issued uniform wage statements to Ms. Sloan and other aggrieved employees that fail to list the correct name and address of the legal entity of the actual employer, in violation of Labor Code section 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer in the future for various reasons, including, filing an administrative, judicial claim, or other action to seek relief against their employer, obtain unemployment benefits, etc. Ms. Sloan's wage statements list an entity named "IHG Management Maryland LLC" with the address of "11580 Great Oaks Way, Alpharetta, Georgia 30022." However, there is no such entity listed on the California Secretary of State's website; instead, a similarly-named company appears to be "IHG Management (Maryland) LLC," located at "Three Ravinia Drive, Suite 100, Atlanta, GA 30346." Adding to the confusion, Ms. Sloan's

LAW OFFICES OF

# MARK YABLONOVICH

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 9 of 14

_____

Wage Theft Notice provided to her at the time of hire lists "IHG – Hotel Indigo Los Angeles Downtown," an entity not listed on the California Secretary of State's website, located at "899 Francisco Street Los Angeles CA 90017." *See example of violative paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the last four digits of the employee's social security number or an employee identification number other than a social security number; failing to list total hours; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…" Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), IHG willfully failed to maintain accurate payroll records for Ms. Sloan and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and failing to correctly list the gross wages and net wages earned by them.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, IHG failed, on a company-wide basis, to keep accurate records of shift and meal period start and stop times for Ms. Sloan and other aggrieved

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 10 of 14

___

employees, in violation of section 1198.

Because IHG failed to provide, among other things, the accurate number of total hours worked, as well as gross wages earned, and net wages earned on wage statements, Ms. Sloan and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full and were given confusing information to contact their employer. Instead, Ms. Sloan and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Sloan and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(a), 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

## Violation of California Labor Code section 204

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, IHG failed to pay Ms. Sloan and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Sloan and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

## Violation of California Labor Code sections 201, 202, and 203

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages

LAW OFFICES OF

# MARK YABLONOVICH

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 11 of 14

___

shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no longer employed by IHG all their earned wages at the time of discharge, or within seventy-two (72) hours of their leaving IHG's employ in violation of California Labor Code sections 201 and 202. For example, on November 1, 2017, Ms. Sloan gave IHG two weeks' notice of her intention to quit. Her last day of work was on November 14, 2017, but IHG did not tender Ms. Sloan's final wages until three (3) to five (5) days later. In addition, on information and belief, IHG has a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202. As previously stated, although Ms. Sloan provided IHG with more than seventy-two (72) hours' notice of her intention to quit, IHG failed to pay Ms. Sloan her final wages on her last day of work, in violation of Labor Code section 202.

In addition, IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no longer employed by IHG all their earned wages, at the time of discharge, or within seventy-two (72) hours of their leaving IHG's employ including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages.

Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

## Violation of California Labor Code section 1198 and California Code of Regulations Title 8, section 11050 subdivision 4(C)

California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11050(4)(C) provides that "[w]hen an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." California Code of Regulations, Title 8, defines a split shift as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

IHG willfully violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11050(4)(C), because IHG failed to pay Ms. Sloan and other aggrieved employees a split-shift premium when they returned to work for an additional shift in the same

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 12 of 14

day, after having been clocked out for more than an hour.

IHG sometimes scheduled Ms. Sloan to work double-shifts that were separated by more than one (1) hour of time, but failed to pay her one (1) hour's pay at the minimum wage in addition to the minimum wage for that workday. Upon information and belief, other aggrieved employees also worked double shifts separated by more than one (1) hour of time without receiving one additional hour at minimum wage from IHG for working a split-shift. Accordingly, IHG required Ms. Sloan and other aggrieved employees to work split shifts but failed to pay them an additional hour at minimum wage in violation of California Labor Code section 1198.

IHG's failure to provide Ms. Sloan and other aggrieved employees with split-shift pay when they returned to work for an additional shift in the same day, after having been clocked out for more than an hour, violates California Labor Code section 1198 and California Code of Regulations Title 8, Section 11050(4)(C). Ms. Sloan and other aggrieved employees are therefore entitled to recover penalties pursuant to Labor Code sections 1194 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code section 2802</u>**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

During the relevant time period, IHG, on a company-wide basis, required that Ms. Sloan and other aggrieved employees utilize their own personal cell phones to carry out their job duties, but IHG failed to reimburse them for the costs of their cell phone plans and data charges. For example, Ms. Sloan was required to keep her personal cellular phone with her at all times while at work, in order to carry out her duties, such as communicating with management regarding work-related matters, such as requesting re-stocking of liquor or needing to be relieved for a meal or rest period. Although IHG required Ms. Sloan to regularly utilize her personal cellular phone to carry out work-related responsibilities, IHG failed to reimburse her for this cost. IHG could have provided Ms. Sloan and other aggrieved employees with the actual tools and materials required for use on the job, including company phones, but instead, IHG passed this operating cost off onto Ms. Sloan and other aggrieved employees.

IHG's policy, practice, and/or procedure of passing its operating costs on to Ms. Sloan and other aggrieved employees by requiring that they use their own personal cellular phones for work is in violation of California Labor Code section 2802. Ms. Sloan and other aggrieved employees are

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 13 of 14

_____

entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

## Violation of California Labor Code section 1198 and California Code of Regulations Title 8, section 11050 subdivision 14

California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11050(14) provides further that "[a]ll working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. [] When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

Although some aggrieved employees work at the front desks and/or concierges and perform tasks that reasonably permit the use of seats, such as checking in guests, greeting guests, handling complaints, and performing register transactions, IHG refuses to provide seats in violation of the applicable wage order and California Labor Code section 1198. Additionally, while porters are required to carry guests' luggage to and from their hotel rooms, there is often downtime in between assisting guests such that the porters can be seated while waiting. IHG's failure to provide seats to its porters is also in violation of the applicable wage order and California Labor Code section 1198. Accordingly, aggrieved employees are entitled to recover penalties pursuant to Labor Code section 2699(a), (f)-(g).

## California Labor Code section 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." IHG, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Sloan's and other aggrieved employees' rights by violating various sections of the California Labor Code.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
October 16, 2018
Page 14 of 14

_____

Accordingly, Ms. Sloan seeks the remedies set forth in Labor Code section 558 for herself, the
State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in
particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558,
Ms. Sloan, acting in the public interest as a private attorney general, seeks assessment and
collection of civil penalties for herself, all other aggrieved employees, and the State of California
against IHG for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7,
510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Ms. Sloan seeks all applicable penalties related
to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter. If you have any questions, please contact me at the
phone number or address below:

Mark Yablonovich
LAW OFFICES OF MARK YABLONOVICH
1875 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 286-0246

Best Regards,

Mark Yablonovich

Copy: IHG MANAGEMENT MARYLAND LLC (via U.S. Certified Mail); IHG
MANAGEMENT (MARYLAND) LLC (via U.S. Certified Mail)

LAW OFFICES OF
## MARK YABLONOVICH

1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508

TELEPHONE: (310) 286-0246
FACSIMILE: (310) 407-5391

July 31, 2018

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/198)

Subject:    *Kendra Sloan v. IHG Management Maryland LLC, et al.*

Dear PAGA Administrator:

This office represents Kendra Sloan in connection with her claims under the California Labor
Code. Ms. Sloan was an employee of either IHG MANAGEMENT MARYLAND LLC and/or
IHG MANAGEMENT (MARYLAND) LLC. For purposes of this letter, Ms. Sloan refers to
these entities together as "IHG."

The employer may be contacted directly:

IHG MANAGEMENT MARYLAND LLC
11580 GREAT OAKS WAY
ALPHARETTA, GA 30022

IHG MANAGEMENT (MARYLAND) LLC
THREE RAVINIA DRIVE, SUITE 100
ATLANTA, GA 30346

Ms. Sloan intends to seek civil penalties, attorney's fees, costs, and other available relief for
violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the
Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Sloan seeks relief on behalf
of herself, the State of California, and other persons who are or were employed by IHG in
California as a non-exempt, hourly-paid employee and who received or should have received at
least one wage statement ("aggrieved employees"). This letter is sent in compliance with the
notice and reporting requirements of California Labor Code section 2699.3.

IHG employed Ms. Sloan from approximately July 10, 2017 to November 14, 2017 as an hourly-
paid Bartender at Hotel Indigo in Downtown Los Angeles. Ms. Sloan typically worked
approximately eight (8) to twelve (12) hours or more per day, six (6) to seven (7) days per week,
and forty-five (45) hours or more per week. At the time Ms. Sloan's employment with IHG
ended, she earned approximately $16.81 per hour. Her job duties included crafting cocktails,
taking food and drink orders for patrons, and serving food and drink to patrons.

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 2 of 14

_____

IHG committed one or more of the following Labor Code violations against Ms. Sloan, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

## IHG's Company-Wide and Uniform Payroll and Human Resources Practices

IHG is a Maryland limited liability company that owns and operates numerous large hotel brands such as Hotel Indigo, Holiday Inn, Crowne Plaza, and others, with approximately 100 current and former employees who worked at the Hotel Indigo locations in California. Upon information and belief, IHG maintains a centralized Human Resources (HR) department at its corporate headquarters in Alpharetta or Atlanta, Georgia, for all non-exempt, hourly-paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. At all relevant times, IHG issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Ms. Sloan and other aggrieved employees, regardless of their location or position.

Upon information and belief, IHG maintains a centralized Payroll department at its corporate headquarters in Alpharetta or Atlanta, Georgia, which processes payroll for all non-exempt, hourly paid employees working for IHG in California, including Ms. Sloan and other aggrieved employees. Further, IHG issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location, position, or manner in which each employee's employment ended. IHG's centralized Payroll department processed payroll for non-exempt, hourly paid employees in the same manner throughout California. In other words, IHG utilized the same methods and formulas when calculating wages due to Ms. Sloan and other aggrieved employees in California.

## Violation of California Labor Code sections 510 and 1198

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that

_____

[1] These facts, theories, and claims are based on Ms. Sloan's experience and counsel's review of those records currently available relating to Ms. Sloan's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Sloan reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 3 of 14

---

employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

IHG willfully failed to pay all overtime wages owed to Ms. Sloan and other aggrieved employees. During the relevant time period, Ms. Sloan and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, sometimes because all hours that they worked were not recorded, and other times because they were simply not paid for the hours that were recorded.

On information and belief, IHG has a company-wide policy of staffing their locations based on a labor budget set by the corporate office. IHG's use of labor budgets resulted in chronic understaffing, such that there were too few employees on duty to handle the workload and provide uninterrupted meal periods. As a result of IHG's systemic utilization of labor budgets and preference for profitability over compliance with labor laws, Ms. Sloan and other aggrieved employees were not provided adequate meal break coverage to allow them to be relieved of their duties for compliant meal breaks and/or were required to perform pre-shift and/or post-shift work while off-the-clock. Thus, Ms. Sloan and other aggrieved employees would have to continue with their duties, such as serving customers and bringing food from the kitchen, after clocking out for meal periods and at the end of their shifts. This would result in Ms. Sloan and other aggrieved employees continuing to work while off-the-clock after their scheduled shifts for an hour or longer, on a regular basis. IHG would not always permit Ms. Sloan and other aggrieved employees to adjust their punch-in or punch-out times so that they could account for and be compensated for this off-the-clock work.

IHG knew or should have known that, as a result of its policies and practices, Ms. Sloan and other aggrieved employees were performing their assigned duties off-the-clock, and were suffered or permitted to perform work for which they were not paid. IHG also knew, or should have known, that it did not compensate Ms. Sloan and other aggrieved employees for off-the-clock work. Because Ms. Sloan and other aggrieved employees regularly worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of the off-the-clock work qualified for overtime premium pay. At other times, IHG simply did not pay for all the hours that were recorded. Therefore, Ms. Sloan and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked. IHG's failure to pay Ms. Sloan and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, IHG did not pay other aggrieved employees the correct overtime rate for the recorded overtime hours that they worked. In addition to an hourly wage, IHG paid other aggrieved employees incentive pay and/or nondiscretionary bonuses. However, in violation of the California Labor Code, IHG failed to incorporate all remunerations, including incentive pay

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 4 of 14

---

and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received incentive pay and/or nondiscretionary bonuses, IHG failed to pay all overtime wages by paying a lower overtime rate than required.

Based on the foregoing, Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

### Violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

As set forth above, on information and belief, IHG's policy of staffing their locations based on a labor budget set by the corporate office resulted in chronic understaffing, causing a lack of meal break coverage and leading employees to perform pre-shift and/or post-shift work while off-the-clock or during their meal breaks.

IHG did not pay minimum wages for all hours worked, e.g., off-the-clock hours that Ms. Sloan and other aggrieved employees worked, including during meal periods, pre- and post-shift work. IHG also sometimes did not pay for all the hours recorded. To the extent the off-the-clock work and/or recorded hours did not qualify for overtime premium payment, IHG did not pay at least minimum wages for those hours worked off-the-clock or were recorded in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, IHG regularly failed to pay at least minimum wages to Ms. Sloan and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Ms. Sloan and other aggrieved employees are therefore entitled to recover civil penalties, underpaid wages, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1197.1 and/or 2699(a), (f)-(g).

### Violation of California Labor Code sections 226.7, 512(a), and 1198

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest periods and to pay employees one (1) additional hour of pay at the employee's regular rate for each workday that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 5 of 14

---

(5) hours per day without providing the employee with an uninterrupted meal period of not less
than thirty (30) minutes, except that if the total work period per day of the employee is not more
than six (6) hours, the meal period may be waived by mutual consent of both the employer and
the employee. Under California law, first meal periods must start after no more than five hours.
*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections
226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a
second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours
per day, except that if the total hours worked is no more than twelve (12) hours, the second meal
period may be waived by mutual consent of the employer and the employee only if the first meal
period was not waived.

Under California law, an employer cannot evade meal break requirements via the use of "on-
duty" meal agreements because it understaffs its locations. *Abdullah v. U.S. Sec. Assocs.,* 2011
U.S. Dist. LEXIS 156685 (C.D. Cal. Jan. 11, 2011).

California Labor Code section 226.7 provides that no employer shall require an employee to
work during any rest period mandated by an applicable order of the California IWC. The
applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all
employees to take rest periods, which insofar as practicable shall be in the middle of each work
period" and that the "rest period time shall be based on the total hours worked daily at the rate of
ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily
work time is less than three and one-half (3½) hours. To comply with its obligation to provide
rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an
employer must "relinquish any control over how employees spend their break time, and relieve
their employees of all duties—including the obligation that an employee remain on call. A rest
period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc*., 2 Cal.
5th 257, 269-270 (2016).

As stated, on information and belief, IHG has a company-wide policy of staffing based on a
labor budget, which resulted in understaffing and a lack of break coverage, preventing Ms. Sloan
and other aggrieved employees from taking all timely, uninterrupted meal periods to which they
were entitled. As a result of these practices and/or policies, Ms. Sloan and other aggrieved
employees continued to perform their assigned duties without being able to take timely,
compliant meal periods, in order to adhere to this labor budget. Additionally, because IHG
sometimes scheduled only one bartender per shift, there was insufficient and/or no break
coverage to allow Ms. Sloan and other aggrieved employees to be relieved of their duties to take
meal periods. Instead, Ms. Sloan and other aggrieved employees were required to work
throughout their entire shifts, without taking compliant meal or rest periods. Ms. Sloan and other
aggrieved employees had to work through part or all of their meal periods, have their meal
periods interrupted, and/or wait extended periods of time before taking meal periods. For
example, Ms. Sloan had meal periods that were missed, late, and/or short due to the lack of meal
break coverage or would be constantly interrupted while she was clocked out for a meal period,
in order to bring out food for bar patrons and other work responsibilities. At other times, Ms.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 6 of 14

---

Sloan and other employees were simply not permitted to take meal periods either at all or before
their fifth hour of work.

In addition, IHG also systematically, and on a company-wide basis, did not schedule second
meal periods and had no policy for permitting Ms. Sloan and other aggrieved employees to take
uninterrupted second 30-minute meal periods on days that they worked in excess of ten (10)
hours in one day. As a result of these practices and/or policies, on days that Ms. Sloan and other
aggrieved employees worked in excess of ten (10) hours, they were not provided with second 30-
minute meal periods. For example, during Ms. Sloan's employment she would work shifts that
were in excess of ten (10) hours, including twelve (12) to fourteen (14) hour shifts, and yet was
not permitted to take a second meal period.

IHG had a company-wide policy of requiring all newly-hired employees to sign blanket Meal
Period Waivers at or near their time of hire. Upon information and belief, IHG took the position
that non-exempt, hourly-paid employees had waived their rights to first and/or second meal
periods for the entirety of their employment and, on that basis, did not provide them with all
meal periods to which they were entitled. IHG's company-wide use of blanket meal waivers
signed at or near the time of hire discouraged and impeded Ms. Sloan and other aggrieved
employees from taking all meal periods to which they were entitled. Additionally, an employer's
obligation to provide a meal break is only "triggered" when the employer "employs an employee
for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer
engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is
triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a
> choice: it must (1) afford an off-duty meal period; (2) consent to a
> mutually agreed-upon waiver if one hour or less will end the shift; or (3)
> obtain written agreement to an on-duty meal period if circumstances
> permit. Failure to do one of these will render the employer liable for
> premium pay.

*Id*. (citing Cal. Lab. Code § 226.7; Wage Order No. 5, subd. 11(A), (B)). That IHG requires
employees sign Meal Waivers simultaneously at or near their time of hire (as opposed to on a
specific workday) renders them invalid and unenforceable, because IHG's obligation to provide
Ms. Sloan and other aggrieved employees with meal breaks does not arise until it has employed
them for a full five (5) hours.

To the extent IHG required its employees to sign written "on-duty" meal period agreements,
such agreements were invalid as the nature of the work performed by Ms. Sloan and other
aggrieved employees did not necessitate an "on-duty" meal period under California law. IHG
could have provided break coverage for its employees or staffed more than one employee at its
work stations, but chose not to do so.

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 7 of 14

___

IHG knew or should have known that as a result of these policies, Ms. Sloan and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods and that they did not receive timely meal periods. As a result, Ms. Sloan and other aggrieved employees had to work through all or part of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods.

As with meal periods, IHG's policies and/or practices prevented Ms. Sloan and other aggrieved employees from being relieved of all duty to take compliant rest periods. As a result, Ms. Sloan and other aggrieved employees would frequently work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted ten (10) minute rest periods to which they were entitled. Ms. Sloan was not able to take rest breaks due to the pressure IHG placed on her to meet workload demands and due to a lack of break coverage for employees.

IHG also engaged in a systematic, company-wide practice and/or policy of not paying all meal and rest period premiums owed when compliant meal and rest periods were not provided. Because of this practice and/or policy, Ms. Sloan and other aggrieved employees have not received premium pay for meal and rest periods violations. To the extent that IHG did pay meal and/or rest period premium wages to other aggrieved employees, such payments were admissions of its failure to provide meal and rest periods. Additionally, meal and/or rest period premium wages were paid at the incorrect rates. Because IHG did not properly calculate other aggrieved employees' regular rates of pay by including all remunerations, such as nondiscretionary bonuses and/or incentive pay, any premiums paid for meal and/or rest period violations were also paid at an incorrect rate and resulted in an underpayment of meal and/or rest period premium wages.

Accordingly, IHG failed to provide all meal and rest periods and/or pay all meal and rest premiums in violation of California Labor Code sections 226.7, 512, and 1198. Ms. Sloan and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, underpaid wages, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

**<u>Violation of California Labor Code sections 226(a), 1174(d), and 1198</u>**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. IHG has not provided Ms. Sloan and other aggrieved employees with properly itemized wage statements. Moreover, an aggrieved employee may seek civil penalties under Labor Code section 2699 for violations of wage statement requirements without the need to establish injury. *Lopez v. Friant & Associates*, LLC, 15 Cal. App. 5th 773 (2017).

Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial

<sub>LAW OFFICES OF</sub>

# MARK YABLONOVICH

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 8 of 14

---

citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

IHG has knowingly and intentionally provided Ms. Sloan and other aggrieved employees with incomplete and inaccurate wage statements. Specifically, IHG violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9). Because IHG did not record the hours Ms. Sloan and other aggrieved employees worked while off-the-clock, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5). IHG also failed to list the total hours worked by Ms. Sloan and other aggrieved employees for work performed while off-the-clock in violation of section 226(a)(2). Additionally, because IHG did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and premium wages, IHG did not list the correct amount of gross wages and net wages earned by other aggrieved employees in compliance with section 226(a)(1) and (5). IHG also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9). Furthermore, because IHG failed to pay all meal and rest period premiums to Ms. Sloan and other aggrieved employees, IHG did not list the correct amount of gross wages earned by Ms. Sloan and other aggrieved employees in compliance with section 226(a)(1). For the same reason, IHG failed to list the correct amount of net wages earned by Ms. Sloan and other aggrieved employees in violation of section 226(a)(5).

Separate from these violations, IHG issued uniform wage statements to Ms. Sloan and other aggrieved employees that fail to list the correct name and address of the legal entity of the actual employer, in violation of Labor Code section 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer in the future for various reasons, including, filing an administrative, judicial claim, or other action to seek relief against their employer, obtain unemployment benefits, etc. Ms. Sloan's wage statements list an entity named "IHG Management Maryland LLC" with the address of "11580 Great Oaks Way, Alpharetta, Georgia 30022." However, there is no such entity listed on the California Secretary of State's website; instead, a similarly-named company appears to be "IHG Management (Maryland) LLC," located at "Three Ravinia Drive, Suite 100, Atlanta, GA 30346." Adding to the confusion, Ms. Sloan's Wage Theft Notice provided to her at the time of hire lists "IHG – Hotel Indigo Los Angeles Downtown," an entity not listed on the California Secretary of State's website, located at "899 Francisco Street Los Angeles CA 90017." *See example of violative paystub below.*

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 9 of 14



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the last four digits of the employee's social security number or an employee identification number other than a social security number; failing to list total hours; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…" Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), IHG willfully failed to maintain accurate payroll records for Ms. Sloan and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and failing to correctly list the gross wages and net wages earned by them.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, IHG failed, on a company-wide basis, to keep accurate records of shift and meal period start and stop times for Ms. Sloan and other aggrieved employees, in violation of section 1198.

Because IHG failed to provide, among other things, the accurate number of total hours worked, as well as gross wages earned, and net wages earned on wage statements, Ms. Sloan and other

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 10 of 14

___

aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full and were given confusing information to contact their employer. Instead, Ms. Sloan and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Sloan and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(a), 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

## Violation of California Labor Code section 204

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, IHG failed to pay Ms. Sloan and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Sloan and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

## Violation of California Labor Code sections 201, 202, and 203

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

LAW OFFICES OF
# Mark Yablonovich

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 11 of 14

IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no longer
employed by IHG all their earned wages at the time of discharge, or within seventy-two (72)
hours of their leaving IHG's employ in violation of California Labor Code sections 201 and 202.
For example, on November 1, 2017, Ms. Sloan gave IHG two weeks' notice of her intention to
quit. Her last day of work was on November 14, 2017, but IHG did not tender Ms. Sloan's final
wages until three (3) to five (5) days later. In addition, on information and belief, IHG has a
company-wide practice or policy of paying departing employees their final wages on the next
regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections
201 and 202. As previously stated, although Ms. Sloan provided IHG with more than seventy-
two (72) hours' notice of her intention to quit, IHG failed to pay Ms. Sloan her final wages on
her last day of work, in violation of Labor Code section 202.

In addition, IHG willfully failed to pay Ms. Sloan and other aggrieved employees who are no
longer employed by IHG all their earned wages, at the time of discharge, or within seventy-two
(72) hours of their leaving IHG's employ including, but not limited to, overtime wages,
minimum wages, and meal and rest period premium wages.

Ms. Sloan and other aggrieved employees are entitled to recover civil penalties, attorney's fees,
costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

## Violation of California Labor Code section 1198 and California Code of Regulations Title 8, section 11050 subdivision 4(C)

California Labor Code section 1198 provides that no employer may employ an employee under
conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code
section 1198 further requires that ". . . the standard conditions of labor fixed by the commission
shall be the . . . standard conditions of labor for employees. The employment of any employee . .
. under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11050(4)(C) provides that "[w]hen an employee
works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the
minimum wage for that workday, except when the employee resides at the place of
employment." California Code of Regulations, Title 8, defines a split shift as "a work schedule,
which is interrupted by non-paid non-working periods established by the employer, other than
bona fide rest or meal periods."

IHG willfully violated California Labor Code section 1198 and California Code of Regulations,
Title 8, section 11050(4)(C), because IHG failed to pay Ms. Sloan and other aggrieved
employees a split-shift premium when they returned to work for an additional shift in the same
day, after having been clocked out for more than an hour.

IHG sometimes scheduled Ms. Sloan to work double-shifts that were separated by more than one
(1) hour of time, but failed to pay her one (1) hour's pay at the minimum wage in addition to the

LAW OFFICES OF
**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 12 of 14

___

minimum wage for that workday. Upon information and belief, other aggrieved employees also worked double shifts separated by more than one (1) hour of time without receiving one additional hour at minimum wage from IHG for working a split-shift. Accordingly, IHG required Ms. Sloan and other aggrieved employees to work split shifts but failed to pay them an additional hour at minimum wage in violation of California Labor Code section 1198.

IHG's failure to provide Ms. Sloan and other aggrieved employees with split-shift pay when they returned to work for an additional shift in the same same day, after having been clocked out for more than an hour, violates California Labor Code section 1198 and California Code of Regulations Title 8, Section 11050(4)(C). Ms. Sloan and other aggrieved employees are therefore entitled to recover penalties pursuant to sections 1194 and/or 2699(a), (f)-(g).

**Violation of California Labor Code section 2802**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

During the relevant time period, IHG, on a company-wide basis, required that Ms. Sloan and other aggrieved employees utilize their own personal cell phones to carry out their job duties, but IHG failed to reimburse them for the costs of their cell phone plans and data charges. For example, Ms. Sloan was required to keep her personal cellular phone with her at all times while at work, in order to carry out her duties, such as communicating with management regarding work-related matters, such as requesting re-stocking of liquor or needing to be relieved for a meal or rest period. Although IHG required Ms. Sloan to regularly utilize her personal cellular phone to carry out work-related responsibilities, IHG failed to reimburse her for this cost. IHG could have provided Ms. Sloan and other aggrieved employees with the actual tools and materials required for use on the job, including company phones, but instead, IHG passed this operating cost off onto Ms. Sloan and other aggrieved employees.

IHG's policy, practice, and/or procedure of passing its operating costs on to Ms. Sloan and other aggrieved employees by requiring that they use their own personal cellular phones for work is in violation of California Labor Code section 2802. Ms. Sloan and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

LAW OFFICES OF
# MARK YABLONOVICH

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 13 of 14

---

### California Labor Code section 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." IHG, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Sloan's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Sloan seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Sloan, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against IHG for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Ms. Sloan seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

LAW OFFICES OF

**MARK YABLONOVICH**

Re: *Kendra Sloan v. IHG Management Maryland LLC, et al.*
July 31, 2018
Page 14 of 14

_____

Thank you for your attention to this matter. If you have any questions, please contact me at the
phone number or address below:

Mark Yablonovich
LAW OFFICES OF MARK YABLONOVICH
1875 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 286-0246

Best Regards,

Mark Yablonovich

Copy: IHG MANAGEMENT MARYLAND LLC (via U.S. Certified Mail); IHG
MANAGEMENT (MARYLAND) LLC (via U.S. Certified Mail)

LAW OFFICES OF
## MARK YABLONOVICH

1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508

CERTIFIED MAIL

7017 1450 0002 0141 7

UNITED STATES POSTAGE
PITNEY BOWES
$007.09⁰
02 1P
0000557379    JUL 31 2018
MAILED FROM ZIP CODE 90067

IHG MANAGEMENT MARYLAND LLC
11580 GREAT OAKS WAY
ALPHARETTA, GA 30022

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )    C. Date of Delivery |
| 1. Article Addressed to:<br>IHG Management<br>Maryland LLC<br>11580 Great Oaks Way<br>Alpharetta, GA 30022 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
|  | 3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7017 1450 0002 0141 7666 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery    $
Postage
Total Postage and Fees    $
Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

Postmark
Here

7017 1450 0002 0141 7666

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

LAW OFFICES OF

**MARK YABLONOVICH**

1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508



7017 1450 0002 0141 7659

UNITED STATES POSTAGE
PITNEY BOWES
$007.09⁰
02 1P
0000557379  JUL 31 2018
MAILED FROM ZIP CODE 90067

IHG MANAGEMENT (MARYLAND) LLC
THREE RAVINIA DRIVE, SUITE 100
ATLANTA, GA 30346

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage $

Total Postage and Fees $

Postmark
Here

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

7017 1450 0002 0141 7659

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

IHG Management (Maryland) LLC
Three Ravina Drive, Suite 100
Atlanta, GA 30346

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail®          ☐ Priority Mail Express™
☐ Registered              ☐ Return Receipt for Merchandise
☐ Insured Mail            ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)       7017 1450 0002 0141 7659

PS Form 3811, July 2013          Domestic Return Receipt





7014 1200 0001 5878 9359

LAW OFFICES OF

MARK YABLONOVICH

1875 CENTURY PARK EAST, SUITE 700

LOS ANGELES, CALIFORNIA 90067-2508

IHG MANAGEMENT (MARYLAND) LLC

THREE RAVINIA DRIVE, SUITE 100

ATLANTA, GA 30346

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature **X** ☐ Agent ☐ Addressee |
| | B. Received by *(Printed Name)* \| C. Date of Delivery |
| 1. Article Addressed to: IHG Management (Maryland) LLC Three Ravinia Drive, Suite 100 Atlanta GA 30346 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| | 3. Service Type ☑ Certified Mail® ☐ Priority Mail Express™ ☐ Registered ☒ Return Receipt for Merchandise ☐ Insured Mail ☐ Collect on Delivery |



UNITED STATES POSTAGE
PITNEY BOWES
$008.25⁰
02 1P
0000557379
MAILED FROM ZIP CODE 90067

**CERTIFIED MAIL**™

7014 1200 0001 5878 9342

LAW OFFICES OF
**MARK YABLONOVICH**
1875 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067-2508

**IHG MANAGEMENT MARYLAND LLC**
**11580 GREAT OAKS WAY**
**ALPHARETTA, GA 30022**

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

IHG Management Maryland LLC
11580 Great Oaks Way
Alpharetta, GA 30022

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail®   ☐ Priority Mail Express™
☐ Registered        ☐ Return R

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is: 1875 Century Park East, Suite 700, Los Angeles, CA  90067.

On January 4, 2019, I served the following document described below as:

- **FIRST AMENDED PAGA COMPLAINT**

On the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Michael J. Burns
Eric E. Hill
SEYFARTH SHAW LLP
560 Mision Street, Suite 3100
San Francisco, CA 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

**( X )  MAIL:**  I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. postal service on that same day in the ordinary course of business.

**( )    BY E-MAIL:**  I hereby certify that this document was served from Los Angeles, California, by e-mail delivery on the parties listed herein at their most recent known e-mail address   or   e-mail   of   record   in   this   action:

**( )    BY PERSONAL SERVICE:**  I caused such envelope to be hand delivered to the office of the addressee on the date specified above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 4, 2019 at Los Angeles, California.

_____
Aarika Davis